# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

TINA RENEE BAIREFOOT,                        *
                                             *
DAE'QUANDREA TREVELL NELSON and              *
                                             *
NATHAN LEE FOX, individually and on behalf   *
of a class of all others similarly situated, *
                                             *
                        Plaintiffs,          *
                                             *    Case No: 9:17-cv-2759-RMG
v.                                           *
                                             *    (Class Action)
CITY OF BEAUFORT, SOUTH CAROLINA;            *
                                             *    Jury Trial Requested
TOWN OF BLUFFTON, SOUTH CAROLINA,            *
                                             *
                                             *
                                             *
                        Defendants.          *
                                             *

---

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.      It is unconstitutional to deny counsel to poor people facing criminal prosecution and then incarcerate them upon conviction.  Yet each week in South Carolina's municipal courts, defendants are prosecuted, convicted, and jailed without having a lawyer appointed to their case, or ever even being advised of their right to counsel.  Most of these defendants – potentially thousands – are incarcerated in local jails every year, while some serve their unlawful sentences in state prison.  If South Carolina municipalities choose to create municipal courts, they have no choice but to comply with the Constitution.

2.      Upon information and belief, the majority of the 212 municipalities in South Carolina deprive indigent defendants of counsel in municipal courts, including the City of Beaufort

1

and the Town of Bluffton.  Despite the total absence of public defenders in their municipal courts, these cities and towns continue to prosecute, convict, and impose jail sentences on uncounseled defendants.  It is the policy, practice, and custom of Defendants City of Beaufort and Town of Bluffton to exclude indigent defense from municipal courts.  Doing so is a direct and proximate cause of Plaintiffs' and class members' unlawful incarceratory sentences and consequent injury. Such consequences include separating parents and children, harming physical and emotional health, and adversely affecting housing, employment, child custody, and immigration status.

3.      In December 2016, Plaintiff Tina Renee Bairefoot was stopped at the door of Walmart, allegedly having put candy bars, a dog collar, and hair care product in her coat pockets without paying.  She never removed the items from the store premises, and all items were returned to Walmart.  Nonetheless, Ms. Bairefoot was charged with shoplifting in Beaufort Municipal Court before the Honorable Ralph "Ned" Tupper.  Judge Tupper did not advise Ms. Bairefoot of her right to counsel and did not appoint her an attorney.  Judge Tupper did not allow Ms. Bairefoot to present evidence in her defense and did not afford her meaningful process in the adjudication of her guilt.  Instead, Judge Tupper accepted the state's evidence at face value, convicted Ms. Bairefoot, and sentenced her to 30 days in the Beaufort County Detention Center ("BCDC").  During the 14 days she served in jail, Ms. Bairefoot was deprived of her medications and her mental health declined rapidly.  Ms. Bairefoot's wrongful incarceration caused her physical pain and suffering, mental anguish, emotional distress, and loss of income opportunity and earning capacity.  Ms. Bairefoot never spoke to a lawyer during her entire case.

4.      In January 2016, Plaintiff  Dae'Quandrea Trevell Nelson was charged with disturbing the schools and assault and battery third degree, his first criminal case.  Mr. Nelson had a bench trial on his nineteenth birthday before the Honorable Dustin Lee in Bluffton

Municipal Court.  Judge Lee did not advise Mr. Nelson of his right to counsel and did not appoint him an attorney.  Mr. Nelson did not have the legal knowledge, training, or experience to defend himself and was convicted and sentenced to two concurrent terms of 30 days in Beaufort County Detention Center.  He served 14 days in jail.  As a result of this case, Mr. Nelson lost his job and the opportunity for a college football scholarship.  Mr. Nelson's wrongful incarceration caused him physical pain and suffering, mental anguish, emotional distress, and loss of income and earning capacity.  Mr. Nelson never spoke to a lawyer during his entire case.

5.      In February 2017, Plaintiff Nathan Lee Fox pled guilty before the Honorable Mary Sharp in Beaufort Municipal Court on five traffic-related charges.  Judge Sharp did not advise Mr. Fox of his right to counsel and did not appoint him an attorney.  Judge Sharp sentenced Mr. Fox to five consecutive terms of 10 days in Beaufort County Detention Center on each charge, for a total of 50 days in jail, including for speeding not more than 10 miles per hour above the speed limit (an offense for which South Carolina law does not contemplate jail time).  Mr. Fox spent a total of 38 days in Beaufort County Detention Center, during which time his health declined significantly.  Mr. Fox's wrongful incarceration caused him physical pain and suffering, mental anguish, emotional distress, and loss of income and earning capacity.  Mr. Fox never spoke to a lawyer during his entire case.

6.      Beaufort County records indicate that municipal courts are responsible for 16.7 percent of the jail population in Beaufort County.  Put otherwise, one out of six people in jail in Beaufort County is incarcerated on municipal charges only.  None of them have public defenders.  Records also indicate that over a 90-day period in early 2017, uncounseled convictions in Beaufort and Bluffton Municipal Courts resulted in over 50 jail sentences served in Beaufort County Detention Center.  There was no defense attorney in any of these cases.  Plaintiffs Tina Bairefoot,

Dae'Quandrea Nelson, and Nathan Fox bring this class action suit under 42 U.S.C. § 1983 on behalf of themselves and those similarly situated who have been convicted and sentenced to incarceration in Beaufort and Bluffton Municipal Courts without the assistance of counsel as a direct consequence of the City of Beaufort and Town of Bluffton's policy, practice, and custom of denying counsel to indigent defendants in violation of their Sixth and Fourteenth Amendment rights. Plaintiffs seek, for themselves and the putative class members, general monetary damages against the City of Beaufort and the Town of Bluffton to compensate them for each day of their wrongful confinement. Plaintiffs Tina Bairefoot, Dae'Quandrea Nelson, and Nathan Fox also seek for themselves and the putative class members additional monetary damages against the City of Beaufort and the Town of Bluffton to compensate Plaintiffs and putative class members for additional injuries, including but not limited to physical pain and suffering, mental anguish, emotional distress, and loss of income and earning capacity as a result of their wrongful incarceration.

## JURISDICTION AND VENUE

7.     Plaintiffs' claims arise under the Constitution and laws of the United States. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

8.     The federal rights asserted by Plaintiffs are enforceable under 42 U.S.C. § 1983.

9.     Venue is proper in the District of South Carolina under 28 U.S.C. § 1391(b). All Defendants reside in this judicial district. All of the acts and omissions by Defendants giving rise to this action occurred in this judicial district.

## PARTIES

**Named Plaintiffs**

10.     Plaintiff Tina Renee Bairefoot is a 39-year-old female who resides in Beaufort, South Carolina.  On February 6, 2017, Ms. Bairefoot was convicted and sentenced to jail without a lawyer and without valid advisement of her right to counsel in Beaufort Municipal Court.  Ms. Bairefoot served 16 days in Beaufort County Detention Center.  During her unlawful confinement she was deprived of various medications for several days.  Ms. Bairefoot's wrongful incarceration caused her physical pain and suffering, mental anguish, emotional distress, and loss of income and earning capacity.

11.     Plaintiff Dae'Quandrea Trevell Nelson is a 19-year-old male who resided in Bluffton, South Carolina, with his mother at all relevant times to this lawsuit.  On February 21, 2017, Mr. Nelson was convicted and sentenced to jail without a lawyer and without valid advisement of his right to counsel in Bluffton Municipal Court.  Mr. Nelson served 16 days in Beaufort County Detention Center causing him to lose his job.  Mr. Nelson's wrongful incarceration caused him physical pain and suffering, mental anguish, emotional distress, and loss of income and earning capacity.

12.     Plaintiff Nathan Lee Fox is a 31-year-old male who resides in Mauldin, South Carolina.  On February 20, 2017, Mr. Fox was convicted and sentenced to 50 days in jail without a lawyer and without valid advisement of his right to counsel in Beaufort Municipal Court.  Mr. Fox's wrongful incarceration caused him physical pain and suffering, mental anguish, emotional distress, and loss of income and earning capacity.

**Defendants**

13.     Defendant City of Beaufort and Defendant Town of Bluffton are municipal governmental entities in the state of South Carolina, geographically located within Beaufort County.  Beaufort and Bluffton have chosen to establish Beaufort Municipal Court and Bluffton Municipal Court, respectively, as optional courts pursuant to S.C. Code Ann. § 14-25-5(a).

14.     Pursuant to Proviso 61.12 to the South Carolina 2017-2018 Appropriations Act, first enacted for Fiscal Year 2015-2016 and renewed annually, the City of Beaufort and Town of Bluffton are responsible for "provid[ing] adequate funds for representation of indigents" in their courts through agreement with the public defenders or other counsel.  H. 3720, 122nd Sess., at § 61.12 (2017).

15.     However, Beaufort and Bluffton have a policy, practice, and custom not to provide counsel to indigent defendants in their municipal courts.

## FACTS

**The Municipal Court System**

16.     Under South Carolina Code § 14-25-5(a), municipal courts are optional.  Municipal courts hear low-level misdemeanor and traffic offenses occurring within city or town limits.  Municipal courts have overlapping jurisdiction with county magistrate courts.  Therefore, if municipalities do not establish their own courts, the same criminal offenses can be prosecuted in magistrate courts.  Out of a total of 270 incorporated municipalities in South Carolina, 212 cities or towns have elected to create municipal courts.

17.     Municipal courts' dockets are voluminous.  In Fiscal Year 2015-2016, at least 427,273 cases were filed in municipal courts statewide, of which 81,344 were criminal, 6,695 DUI, 321,892 traffic, and 17,342 ordinance violations.  Because not all municipalities reported, the total

municipal caseload may be substantially higher.  By contrast, in the same year there were 120,678

cases filed in General Sessions Courts throughout the state, less than one-third of the municipal

courts' caseloads.

18.        With a state adult population of approximately 3.8 million, the minimum 427,273

municipal cases filed in Fiscal Year 2015-2016 means approximately one municipal case filed for

every nine adults in South Carolina.

19.        Beaufort Municipal Court has "criminal/traffic court" twice a week.  For Fiscal

Year 2015-2016, the City reported a total of 10,175 municipal cases filed in Beaufort Municipal

Court.  With the City of Beaufort's adult population in 2015 at approximately 10,472, the City's

10,175 municipal cases means approximately one municipal case for every adult resident – nine

times the rate statewide.

20.        Bluffton Municipal Court has "criminal/traffic court" once a week.  For Fiscal Year

2015-2016, the City reported a total of 4,680 municipal cases filed in Bluffton Municipal Court.

With the Town of Bluffton's adult population in 2015 at approximately 11,894, the Town's rate

of approximately two municipal cases filed for every five adult residents is almost four times the

rate statewide.

21.        Criminal, DUI, and some traffic offenses carry statutory jail sentences under South

Carolina law, and a few carry mandatory jail sentences.

**South Carolina's Requirements for Indigent Defense in Municipal Courts**

22.        South Carolina Appellate Court Rule 602, Defense of Indigents, provides "(a) . . .

In cases involving criminal charges within the jurisdiction of . . . municipal courts . . . if a[n

incarceration] sentence is likely to be imposed following any conviction, the presiding judge of

the court in which the matter is to be determined shall inform the accused as provided in Rule 2

7

when the case is called for disposition. . . . [The court shall:] Advise the accused of his right to counsel and his right to the appointment of counsel by the court, if the accused is financially unable to employ counsel."

23.     South Carolina law of criminal procedure provides that "[a]ny person entitled to counsel under the Constitution of the United States shall be so advised and if it is determined that the person is financially unable to retain counsel then counsel shall be provided upon order of the appropriate judge unless such person voluntarily and intelligently waives his right thereto."  S.C. Code Ann. § 17-3-10.

24.     The Constitution of the State of South Carolina is silent as to the right to counsel.

25.     In 2015 South Carolina General Assembly passed Proviso 61.12, "Optional Courts and Indigent Representation."  Proviso 61.12 reads as follows: "If a municipality has or elects to have an optional municipal court system, it must provide adequate funds for representation of indigents.  No public defender shall be appointed in any such court unless the municipality and the office of the circuit public defender have reached an agreement for indigent representation and no funds allocated to the [South Carolina] [C]ommission [on Indigent Defense] shall be used to provide compensation for appointed counsel in municipal courts."

26.     Proviso 61.12 has been renewed each year since 2015, most recently as part of South Carolina's 2017-2018 Appropriations Act, approved by the General Assembly and enacted on June 21, 2017.

27.     The Municipal Association of South Carolina ("MASC"), which represents and serves the state's 270 incorporated municipalities, including the City of Beaufort and Town of Bluffton, issued a feature in its October 2015 newsletter entitled "Indigent defense costs are municipal responsibility."  In it, the MASC legislative and public policy advocate Scott Slatton

explained that municipalities have four potential courses of actions in light of the Proviso: (1) Contract with the public defender; (2) Contract with a private attorney; (3) "Remove the threat of jail time for indigents, although this makes it more difficult to collect any fines that might be imposed on the defendant[;]" or (4) "Close the municipal court and negotiate an agreement with the county to have municipal cases tried in magistrate court."  Citing Mr. Slatton, the MASC website adds, "Failure to provide indigents with counsel could expose cities to liability."

28.     Upon information and belief, only a fraction of South Carolina's municipal courts have entered into agreements with public defenders or private attorneys.  Defendants City of Beaufort and Town of Bluffton have not entered into such agreements.

29.     Upon information and belief, in the municipal courts for the majority of municipalities that have not entered into agreements with public defenders or private attorneys, court-appointed counsel is entirely unavailable.  In those courts, poor people have no possibility of obtaining a lawyer.

**Absence of Public Defenders in Municipal Courts in Beaufort County**

30.     Prior to 2009, the Beaufort County Public Defender's Office, a part of the Fourteenth Circuit Public Defender system, did represent indigent defendants in the four municipal courts in the county: Beaufort, Bluffton, Port Royal and Hilton Head.  In 2009, then-Fourteenth Circuit Public Defender Gene Hood sent requests to municipalities for funding to cover the provision of indigent defense services in their courts.  When those requests were declined or otherwise ignored, Mr. Hood notified the Beaufort County Clerk of Court and all municipal court judges that the Fourteenth Circuit Public Defender's Office could no longer be assigned as counsel for indigent defendants in municipal court.  Mr. Hood advised the municipalities that in order to

comply with state and federal requirements to provide indigent defense, the municipalities would need to contract with private attorneys, as they could no longer rely on public defender services.

31.    Upon information and belief, at all relevant times since Mr. Hood's withdrawal of the Public Defender's Office from municipal courts, and notwithstanding the requirements of Proviso 61.12, it has been the policy, practice, and custom of Defendants City of Beaufort and Town of Bluffton not to enter into an agreement with the Fourteenth Circuit Public Defender's Office, the Beaufort County Public Defender's Office, or any private attorney for provision of indigent defense in their municipal courts.

32.    In General Sessions and Magistrate Court matters, the Beaufort County Clerk of Court appoints the Public Defender's Office.  Conversely, neither the Municipal Court Clerks nor any other City or Town employee provides, accepts, or processes public defender application forms from municipal court defendants.  Since 2009, upon information and belief, the Public Defender's Office has not been appointed to a single municipal case.

33.    In South Carolina, indigent defendants must pay a $40 public defender application fee.  Each year, the South Carolina Court Administration collects information from municipalities for its Municipal Judicial Survey.  The municipalities of Beaufort, Bluffton, and Port Royal in Beaufort County reported fully for Fiscal Year 2015-2016.  Their combined reporting for the "public defender application fee $40.00" was $0.

34.    As a direct and proximate cause of Defendants' Beaufort and Bluffton's policy, practice, and custom not to enter into an agreement to provide indigent defense in their municipal courts, hundreds of indigent defendants each month in the City of Beaufort and Town of Bluffton are prosecuted for offenses for which jail time is authorized by statute, and several are subsequently convicted and sentenced to periods of incarceration, without ever being provided an attorney by

Defendants in violation of the Sixth Amendment right to counsel and the Fourteenth Amendment rights to due process and equal protection.

35.    Further, Defendants knew or should have known that many if not most defendants in their municipal courts are indigent and that those defendants routinely receive jail sentences as authorized by state law.  Yet, in the face of known and foreseeable constitutional violations in the municipal courts that the Defendants have chosen to create, Defendants have acted with deliberate indifference to their duty to provide indigent defense by maintaining a policy, practice, and custom of denying indigent defendants appointed counsel.

36.     By contrast, wealthier defendants who can afford to retain private counsel enjoy the assistance of counsel through the entirety of their criminal cases.

37.    Additionally, criminal defendants in Beaufort and Bluffton Municipal Courts are not sufficiently or individually advised of their right to counsel, or of the numerous risks of self-representation, when they appear on their individual cases.

38.    Upon information and belief, the Beaufort County Clerk of Court, the Clerk of Beaufort Municipal Court, as an employee of the City of Beaufort, and the Clerk of Bluffton Municipal Court, as an employee of the Town of Bluffton, do not keep records of requests for public defenders made by defendants in municipal courts.

39.    The BCDC Inmate Handbook describes the right to a public defender for indigent defendants in General Sessions Court and explains that those defendants may apply for and receive jail visits from public defenders.  Specifically, pages 38 to 39 of the Inmate Handbook contain the following: "APPLICATION FOR APPOINTED COUNSEL. When you are brought before the Magistrate on general sessions charges or general sessions bench warrants, you will be advised of your right to apply for a court appointed attorney or public defender, if you cannot afford your

own. You will be required to pay a one-time $40.00 application fee, pursuant to Section 17-3-30(B) of the South Carolina Code of Laws…."  Beaufort County Detention Center, Inmate Handbook 38-39 (2013).  By contrast, the Handbook makes no mention of the right to a court-appointed lawyer or public defender for indigent defendants in municipal courts.

**Jail Sentences in Municipal Courts in Beaufort County**

40.     Despite the absence of public defenders and the absence of any advisement of the right to counsel, defendants in Beaufort and Bluffton Municipal Courts are routinely sentenced to jail.

41.     Available records indicate that during a 90-day period between March 21 and June 19, 2017, there were over 50 sentences of incarceration in Beaufort and Bluffton Municipal Court served in BCDC.  These uncounseled jail sentences included sentences of time served and sentences of additional jail time.

42.     Indeed, Beaufort County records indicate that on June 1, 2017, of the sentenced population at BCDC, 35.7 percent was incarcerated solely because of municipal charges.  None of them had public defenders.

43.     Six months prior, on December 1, 2016, the figures at BCDC were similar: 29.4 percent of the sentenced population was incarcerated solely because of municipal charges.  Again, none of them had public defenders.

44.     Most offenses in municipal court carry a maximum sentence of 30 days in jail, although a few carry longer terms of 60 or 90 days.  Because some municipal court judges sentence defendants to jail time on multiple charges and order those sentences to run consecutively, indigent defendants across the state, including in Beaufort County, receive sentences of 90 days or more in jail.  And since county jails in South Carolina, including BCDC, will only hold inmates with

sentences of up to 90 days, municipal defendants may be transferred to state prison if their sentences exceed this limit – even when they were sentenced without a lawyer at their side.

45.     According to records from the South Carolina Department of Corrections, between January 1, 2015 and March 30, 2017, there were 274 admissions to state prison of defendants sentenced by municipal courts across the state, 209 of which were for municipal sentences only.

46.     Upon information and belief, because the majority of municipal courts do not provide public defenders, most of the individuals serving prison time were uncounseled, including all of those sentenced out of municipal courts in Beaufort County.

47.     Whether in county jail or state prison, the time that uncounseled defendants spend incarcerated has devastating consequences, including family separation, lost wages and earning capacity, physical pain and suffering, and mental and emotional distress.  During and after incarceration, indigent defendants continue to suffer or to be at imminent risk of suffering numerous collateral consequences from their uncounseled convictions and sentences, including in the areas of education, housing, employment, child custody, and immigration.

48.     Uncounseled convictions in municipal court may also expose indigent defendants to prosecution under habitual offender felony laws and, because judges look to criminal history in making sentencing decisions, may otherwise result in harsher sentences in future cases.

**Publicity about the Absence of Public Defenders in Municipal Courts**

49.     On October 5, 2013, Beaufort County's local news source *The Island Packet* ran a story entitled "ACLU: Equal justice for poor remains unfulfilled in SC municipal courts."  The first sentence read, "Fifty years after the U.S. Supreme Court's landmark right-to-counsel decision, poor residents in many places in South Carolina – including Beaufort County – still are tried without a lawyer."  Tom Barton, ACLU: Equal Justice for Poor Remains Unfulfilled in SC

Municipal     Courts,     ISLANDPACKET.COM,     (Oct.     05,     2013,     7:51     PM), http://www.islandpacket.com/news/local/article33534186.html.

50.     In April 2016, the ACLU of South Carolina, the American Civil Liberties Union ("ACLU"), and the National Association of Criminal Defense Lawyers ("NACDL") catalogued the deficiencies in indigent defense in South Carolina's lower courts and specifically highlighted the lack of counsel for indigent defendants in municipal courts in Beaufort County.  *See* ACLU of South Carolina, et. al., *Summary Injustice: A Look at Constitutional Deficiencies in South Carolina's Summary Courts*, 13-19 (2016) ("Summary Injustice Report").  The Summary Injustice Report received media coverage in South Carolina and in Beaufort County in particular, including in *The Post and Courier* and *The Island Packet*.

51.     In January 2017, NACDL issued a follow-up report that further confirmed the findings of the Summary Injustice Report. *See* National Association of Criminal Defense Lawyers, et al., *Rush to Judgment: How South Carolina's Summary Courts Fail to Protect Constitutional Rights* (2017) ("Rush to Judgment Report").  On January 21, 2017, the *Post and Courier* published an article detailing the findings of the Rush to Judgment Report as a "Top Story."

52.     Notwithstanding the two reports and local news articles, the City of Beaufort and Town of Bluffton continued to maintain a policy, practice, and custom of depriving indigent defendants of access to public defenders in municipal court while those defendants continued to be convicted and sentenced to jail.  By doing so, Defendants City of Beaufort and Town of Bluffton have shown deliberate indifference to their duty to provide indigent defense and to the constitutional rights of defendants in their municipal courts.

53.     Indeed, the denial of indigent defendants' right to counsel in municipal courts is so pervasive that on September 15, 2017, South Carolina Supreme Court Chief Justice, Donald W.

Beatty, issued a memorandum to all magistrate and municipal court judges stating that, "[I]t has continually come to my attention that defendants, who are neither represented by counsel nor have waived counsel, are being sentenced to imprisonment." Memorandum from Donald W. Beatty, Chief Justice, Supreme Court of South Carolina, to Magistrates and Municipal Judges (Sept. 15, 2017). Chief Justice Beatty made clear that "[t]his is a clear violation of the Sixth Amendment right to counsel and numerous opinions of the Supreme Court of the United States." Consequently, Justice Beatty demanded that "[a]ll defendants facing criminal charges in your courts that carry the possibility of imprisonment must be informed of their right to counsel and, if indigent, their right to court-appointed counsel prior to proceeding with trial."

**Plaintiff Tina Bairefoot**

54.     Plaintiff Tina Renee Bairefoot is a 39-year-old white female who lives in Beaufort, South Carolina. Ms. Bairefoot completed a two-year online program with the University of Phoenix and received her Associate's Degree in Information Technology in 2012.

55.     At all relevant times, Ms. Bairefoot's estimated annual income has been at or below the Federal Poverty Guideline.

56.     On December 16, 2016, Ms. Bairefoot went shopping at Walmart. Upon information and belief, she was still under the influence of the anesthesia and pain medications following gall bladder surgery and was also taking prescription psychiatric medications for bipolar disorder.

57.     Ms. Bairefoot was stopped at the inner door by a Walmart employee. Ms. Bairefoot had allegedly taken candy bars, a dog collar, and hair care product valued at $163.27 and put them into her coat pockets. Upon being stopped, Ms. Bairefoot apologized to the store

employee and returned the items to her.  Walmart immediately recovered its property in full.

Ms. Bairefoot has no recollection of the incident.

58.     Ms. Bairefoot was arrested and charged in Beaufort Municipal Court with misdemeanor shoplifting a value of merchandise of $2000 dollars or less under South Carolina Code § 16-13-110, an offense punishable by up to 30 days of imprisonment or a $1000 fine.

59.     On December 17, 2016, Ms. Bairefoot appeared before Judge Tupper in bond court at Beaufort County Detention Center and was released on a personal recognizance bond with instructions to appear in Beaufort Municipal Court on January 9, 2017.  Ms. Bairefoot was not informed of her right to court-appointed counsel or provided with a public defender application form.

60.     Judge Tupper or his designee completed Form SCCA-507, Checklist for Magistrate and Municipal Judges (revised July 2014) for bail proceedings.  Item 5 on the form requires that "in all magistrate or municipal cases in which a[n incarceration] sentence is likely to be imposed, defendant was informed of the following: a. Charges against the defendant and nature of the charges[;] b. Right to counsel and right to court-appointed counsel if financially unable to employ counsel[;] c. Defendant was informed orally and provided a copy of this form advising him of his right to obtain court appointed counsel if indigent (must meet federal poverty guidelines) and instructions on how to obtain court appointed counsel."

61.     On Ms. Bairefoot's Form SCCA-507, Judge Tupper or his designee checked 5(a), indicating she had been informed of the charge against her during her bail proceeding.  Items 5(b) and (c) were unchecked, indicating she had not been informed of her right to court-appointed counsel.  A copy of this checklist is required to be attached to the charging document.

62.     On January 9, 2017, Ms. Bairefoot appeared before Judge Tupper in Beaufort Municipal Court.  Judge Tupper did not advise Ms. Bairefoot of her right to court-appointed counsel, did not advise her of the risks of self-representation, and did not make any effort to appoint counsel in her case.

63.     Ms. Bairefoot pled not guilty.  The Beaufort Police officer who had arrested Ms. Bairefoot at Walmart prosecuted the case against her.  The officer gave testimony, followed by a Walmart employee.  Ms. Bairefoot did not have the legal knowledge, experience, or training to cross-examine the officer or employee, so their testimonies went unchallenged and unquestioned.

64.     Without a lawyer to defend her, Ms. Bairefoot attempted to explain to the judge that she did not intend to take items from Walmart.  She explained that she had just had surgery and was on pain medications as well as various prescription medications for her mental health.  Judge Tupper interrupted her to ask, "Any of those medications have side effects that make you steal?"  Ms. Bairefoot clarified that she meant she had no memory of the incident or the details to which the Walmart employee had testified and that she did not have the intention to remove items from the store.  Although Ms. Bairefoot did not know the statutory elements of the offense of shoplifting, one is that the defendant must have "the intention of depriving the merchant of the possession, use, or benefit of the merchandise."  S.C. Code Ann. § 16-13-110(A)(1).

65.     Judge Tupper told Ms. Bairefoot that if before he "pass[ed] judgment" she brought a note from her doctor that her medication could "cause you to shoplift," then he would "work with" her.  Then, under his breath, Judge Tupper said, "good luck with getting that." Judge Tupper continued Ms. Bairefoot's case until February 6, 2017.

66.    On February 6, 2017, Ms. Bairefoot appeared again in Beaufort Municipal Court with paperwork.  Ms. Bairefoot attempted to advocate for herself numerous times, saying "I do have some evidence that I would like to…."  But each time Judge Tupper interrupted her, telling her that he did not care what she had to say and to "go sit down."  Judge Tupper refused to let Ms. Bairefoot speak, declaring: "No, I'm giving you 30 days.  In jail.  Stop stealing."

67.    Ms. Bairefoot was booked into Beaufort County Detention Center that evening.  She served 14 days of her 30-day sentence, in addition to her one day pretrial, because of good time credits given her low-level charge.

68.    Ms. Bairefoot could not have practicably sought habeas relief while in custody because of the length of her actual confinement.

69.    For nearly the first week in jail, Ms. Bairefoot was deprived of her medication.  It took approximately six days before she received any of her medications, including mental health medications.  During her entire period of incarceration, she never received her blood pressure medication.

70.    Ms. Bairefoot's mental health declined drastically during her time in jail.  She was paranoid and extremely depressed.  Ms. Bairefoot's mental health would not have declined as precipitously had she been given access to her prescribed medications.

71.    Since Ms. Bairefoot's release from jail, her incarceration continues to haunt her.  She has difficulty sleeping and has nightmares about returning to jail.  She is anxious she will again end up in Beaufort Municipal Court and Beaufort County Detention Center.

72.    Despite her fears, Ms. Bairefoot has attempted to obtain employment since her release from jail because of her unstable financial situation.  She was considered for several jobs, but was informed that she would not be hired because she had a recent conviction for shoplifting.

**Plaintiff Dae'Quandrea Nelson**

73.     Plaintiff Dae'Quandrea Trevell Nelson is 19-year-old Black male who lived with his mother in Bluffton, South Carolina, at all relevant times to this lawsuit.  As a result of his uncounseled municipal case in Bluffton Municipal Court, Mr. Nelson lost his job and the opportunity for a college scholarship.

74.     At all relevant times, Mr. Nelson's estimated annual income has been at or below the Federal Poverty Guideline.

75.     Mr. Nelson graduated from Bluffton High School in 2016, where he played on the football team.  Mr. Nelson applied for and was accepted to a South Carolina college that had scouted him, and the coaches made him a verbal offer to try out for a two-year full scholarship to play on their team.  If Mr. Nelson played well and kept his grades up, he would receive a full scholarship for the remaining two years of his education towards a bachelor's degree.  Mr. Nelson would have been the first member of his direct family to attend college.

76.     After the end of the school day on January 20, 2016, when Mr. Nelson was 17 years old, a fight in which he and approximately five other students participated occurred in the school hallway.  Mr. Nelson was not arrested that day in connection with the fight.  Until this time, Mr. Nelson's limited involvement with the criminal justice system was for a speeding ticket the previous December, for which he had received a summons and paid a fine.

77.     Mr. Nelson knew or believed that fights on school property were treated by school and law enforcement officials as criminal matters rather than matters of student discipline.  So on January 21, 2016, Mr. Nelson called Beaufort County Clerk of Court and informed the County employee that he had been involved in a fight at Bluffton High School and asked if there was a

warrant for his arrest.  The County employee informed him there was no warrant but said he could check with the Bluffton Police Department.

78.     The next day, Mr. Nelson went to Bluffton Police Department and said he had been involved in a fight at Bluffton High School and wanted to know if there was a warrant for his arrest.  The Town of Bluffton employee said his name was not in the system and told Mr. Nelson to take a seat.

79.     Approximately thirty minutes later, two Bluffton Police officers came to where Mr. Nelson was seated and arrested and handcuffed him.

80.     Mr. Nelson was transferred by Bluffton Police Department and booked into the Beaufort County Detention Center later that afternoon on two municipal charges: disturbing the schools and assault and battery third degree.

81.     Mr. Nelson spent the night of January 21, 2016, at the Beaufort County Detention Center.  On January 22, 2016, Mr. Nelson appeared before Magistrate Mark Fitzgibbons in bond court at Beaufort County Detention Center and was released on a personal recognizance bond with instruction to appear in Bluffton Municipal Court on February 2, 2016.  He was not informed of his right to court-appointed counsel or provided with a public defender application form.

82.     Magistrate Fitzgibbons or his designee completed Form SCCA-507, Checklist for Magistrate and Municipal Judges.  As in Ms. Bairefoot's case, item 5(a) on Mr. Nelson's form was checked, indicating he had been informed of the charges against him during his bail proceedings.  Items 5(b) and (c) were unchecked, indicating he had not been informed of his right to court-appointed counsel.

83. Mr. Nelson arrived at Bluffton Municipal Court on his scheduled February 2nd court date and spoke with a Bluffton Police Officer. The officer told Mr. Nelson that he could do Pretrial Intervention ("PTI") or wait to see the judge. The officer said Mr. Nelson would have to apply for PTI with the municipal court clerk and pay $100. The police officer did not explain PTI or its requirements.

84. Mr. Nelson was afraid of going back to Beaufort County Detention Center, so he told the officer that he wanted PTI.

85. The Clerk of Bluffton Municipal Court, a Town employee, gave Mr. Nelson a PTI application form on which he had to list his name, date of birth, social security number, and charges. The only additional information the clerk gave Mr. Nelson was that he would have to provide a $100 money order to be accepted into the program and $250 during the program. The application form did not explain the requirements of the program.

86. Mr. Nelson left the courtroom that day without ever seeing the judge or a defense attorney, without being advised of his right to court-appointed counsel, without being asked how he wished to plead or actually pleading guilty, and without being informed of the implications of the pretrial program he had been offered.

87. On or around February 17, 2016, Mr. Nelson delivered a $100 money order to the Town of Bluffton Solicitor's office for his application to PTI. On or around March 22, 2016, Mr. Nelson was informed by mail that he had been accepted into PTI and that he would need to bring another money order for $250 to the Bluffton Solicitor's office in April, which he did.

88. Sometime in April 2016, Mr. Nelson went back to the Bluffton Solicitor's office, where a Town of Bluffton employee informed him that he had to complete four days of community service at BCDC, scheduled for the last two weekends in July, and pay $30 to BCDC

21

for that service. He would also need to attend a mandatory prison tour as part of his PTI requirements. He was never provided legal advice about PTI program requirements or his participation therein.

89.    Mr. Nelson forgot about his scheduled community service for PTI and the $30 community service fee. When he realized his oversight, Mr. Nelson went to the Bluffton Solicitor's office to explain his mistake and to inquire about next steps. He was not told when his community service would be rescheduled. Mr. Nelson appeared for the mandatory prison tour at Allendale Correctional Center.

90.    Mr. Nelson did not believe he was in violation of his PTI requirements, given that he had paid $350 in fees, attempted to reschedule his community service, and attended the prison tour.

91.    Mr. Nelson was therefore surprised to receive notices at the end of January 2017 that he had failed PTI and was required to appear in Bluffton Municipal Court on February 21, 2017.

92.    On February 21, 2017, Mr. Nelson's nineteenth birthday, he arrived at Bluffton Municipal Court with his cousin for the 2 p.m. session. At or around 3 p.m., Judge Lee took the bench.

93.    When Mr. Nelson's case was called, Judge Lee did not advise Mr. Nelson of his right to court-appointed counsel, did not advise him of the risks of self-representation, and did not make any effort to appoint counsel in his case.

94.    A Bluffton Police officer, who also acted as the "school resource officer" at Bluffton High School, prosecuted the case against Mr. Nelson. Judge Lee asked the officer and Mr. Nelson whether there was any plea deal worked out. When they indicated there was not,

Judge Lee did not ask Mr. Nelson whether he pled guilty or not guilty or whether he wished to waive his right to a jury and receive a bench trial. All the same, a bench trial was held.

95.     The only evidence presented against Mr. Nelson was a cell phone video that the officer played in court and said had come from a student. The officer did not authenticate the video or explain its chain of custody or how the police came to have it in their possession. The officer narrated the cell phone video, although he had not been present at the scene at the time it was filmed and testified that he had only spoken to the alleged victim after the fact.

96.     The officer misidentified Mr. Nelson among several students shown in the video, correcting himself only when Mr. Nelson pointed himself out in the video. Defendant Judge Lee did not question the officer about his misidentification of Mr. Nelson.

97.     After watching the video, Judge Lee asked Mr. Nelson whether he had any questions for the officer. Mr. Nelson lacked the legal knowledge, training, or experience to cross-examine the police officer or to make any objection to the video evidence being played in court. The officer's testimony and the video evidence therefore went unchallenged and unquestioned.

98.      Judge Lee then asked Mr. Nelson whether he wanted to present any witnesses or testify on his behalf. Mr. Nelson lacked the legal knowledge, training, or experience to present a defense. Mr. Nelson did not to say anything in his defense.

99.     Judge Lee placed Mr. Nelson under oath and asked him whether he had failed to complete PTI and, if so, why. Mr. Nelson said that he had forgotten his scheduled community service but, despite that, had still completed the prison tour afterward.

100.     Judge Lee found Mr. Nelson guilty of assault and battery third degree and disturbing the schools. He explained that because Mr. Nelson had been given a chance and

failed to complete PTI, he had already showed that he did not care. Judge Lee never announced the basis on which he found Mr. Nelson guilty of the crimes charged. Judge Lee sentenced him to "30 days in the Beaufort County Detention Center with those charges to run concurrent, meaning at the same time."

101.     Before being handcuffed by a Bluffton Police officer, Mr. Nelson gave his wallet, watch, and cell phone to his cousin. Mr. Nelson was booked into Beaufort County Detention Center that evening.

102.     At no point in the entire process was Mr. Nelson afforded an attorney.

103.     Mr. Nelson spent 16 days in jail on his 30-day sentence, because he received good time credits given his low-level charges. During his incarceration, he was scared and suffered emotionally and physically and was often unable to sleep. As a direct result of his incarceration, Mr. Nelson lost his job at a chain restaurant where he had worked around 40 hours per week at $10 an hour.

104.     Mr. Nelson could not have practicably sought habeas relief while in custody because of the length of his actual confinement.

105.     Mr. Nelson was released from Beaufort County Detention Center at 5 a.m. on March 9, 2017.

106.     As a result of his municipal case, Mr. Nelson lost the opportunity for a football scholarship to a four-year college. Because he cannot afford tuition, as of October 2017, Mr. Nelson is not pursuing a college education.

**Plaintiff Nathan Fox**

107.     Plaintiff Nathan Lee Fox is a 31-year-old white male who lives in Mauldin, South Carolina, where he moved in early 2017. Mr. Fox is a high school graduate and attended in-

person classes at several colleges and universities. Between 2011 and 2016, Mr. Fox was a

resident of Beaufort County. During this time, Mr. Fox had intermittent employment at various

restaurants in Beaufort County that at most paid $11 per hour. At all relevant times, his

estimated annual income has been at or below the Federal Poverty Guideline.

108.    On January 29, 2017, Mr. Fox was driving in the City of Beaufort when a

Beaufort Police officer pulled him over and arrested him on five charges that South Carolina law

and Beaufort Municipal Court classify as misdemeanor traffic offenses: speeding, no proof of

insurance, driving under a suspended license third or subsequent offense, use of a license plate

other than for the vehicle for which it was issued, and defacement of a license plate. He was

booked into BCDC that morning.

109.    Other than the speeding charge under South Carolina Code § 56-5-1520(G),

which authorizes punishment by fine only, the other charges Mr. Fox faced are all punishable by

up to between 30 and 90 days of imprisonment or fines of between $100 and $1,000.

South Carolina Judicial Department Court Administration, Fees and Assessments

Memorandum (June 6,

2014), https://masc.sc/SiteCollectionDocuments/Municipal%20Court/court_financials_101.pdf.

110.    On January 30, 2017, Mr. Fox appeared before Judge Tupper in bond court at

Beaufort County Detention Center on all five charges. Judge Tupper set cash bonds at $128.75

(speeding), $2,100 (driving under suspension), $232.50 (no proof of insurance), $232.50 (misuse

of a license plate), and $232.50 (license plate defacement), for a total cash bond of $2,926.25.

Upon information and belief, these are the same amounts typically imposed as fine-sentences,

with court costs, for conviction upon each of these charges.

111.    Mr. Fox was not informed of his right to court-appointed counsel or provided with a public defender application form.

112.    Judge Tupper or his designee completed Form SCCA-507, Checklist for Magistrate and Municipal Judges.  As in Ms. Bairefoot's and Mr. Nelson's cases, item 5(a) on Mr. Fox's form was checked, indicating he had been informed of the charges against him during his bail proceeding.  Items 5(b) and (c) were unchecked, indicating he had not been informed of his right to court-appointed counsel.

113.    Mr. Fox could not afford his $2,926.25 bond and remained in jail for three weeks until his court date.  Mr. Fox was not given access to a lawyer at BCDC during his three weeks of pretrial detention.

114.    On February 20, 2017, Mr. Fox was transported from jail to Beaufort Municipal Court and appeared without a lawyer before Judge Sharp.  Judge Sharp did not advise him of his right to court-appointed counsel, did not advise him of the risks of self-representation, and did not make any effort to appoint counsel in his case.

115.    Mr. Fox pled guilty to all five charges.  Judge Sharp did not seek separate pleas per charge or otherwise distinguish between the five charges in accepting Mr. Fox's guilty plea. Judge Sharp did not advise Mr. Fox of the rights he was waiving by pleading guilty, did not question him about his understanding of those rights, and did not otherwise inquire into whether his plea was knowing, intelligent, and voluntary.  Despite the absence of a formal plea colloquy and without any findings of fact, and despite the deprivation of counsel, Judge Sharp convicted Mr. Fox of all five charges and sentenced him to 10 days in jail on each, to run consecutively for a total of 50 days.  Among the charges on which Mr. Fox was convicted and sentenced to jail

was speeding not more than 10 mph above the speed limit, which cannot carry jail time under South Carolina law.

116.    Mr. Fox did not consult a lawyer at any time during his municipal court case or in conjunction with his guilty plea.  Indeed, in each of Mr. Fox's prior appearances in Beaufort Municipal Court on earlier cases (in November 2014, January 2015, March 2015, May 2015, and September 2015) – all before Judge Tupper and on all of which he pled guilty to jail sentences of time served – Judge Tupper did not advise him of his right to court-appointed counsel, advise him of the risks of self-representation, or make any effort to appoint counsel in his case.  In none of these municipal court cases did Mr. Fox consult a lawyer at any time or specifically in conjunction with his guilty pleas, nor was he ever advised about, or questioned by Judge Tupper about, his understanding of the rights he was waiving through his guilty pleas.

117.    After Judge Sharp sentenced Mr. Fox to incarceration on February 20, 2017, he returned to BCDC.  He also had two bench warrants from magistrate court for driving under suspension first offense and possession of marijuana, for which he had been sentenced to 30 days total.  These magistrate sentences were run consecutively to his 50-day municipal court sentence, for a total of 80 days in jail.

118.    Mr. Fox spent 38 days in Beaufort County Detention Center from the date of his arrest on the five municipal charges.  Mr. Fox could not have practicably sought habeas relief while in custody because of the length of his actual confinement.

119.    Mr. Fox suffers from a number of health conditions.  During his confinement in Beaufort County Detention Center, his health declined drastically.  He also suffered mental and emotional distress and experienced anxiety and feelings of depression.

120.    Mr. Fox submitted several medical request/complaint forms to the BCDC doctor and made informal complaints to nursing staff.  After approximately two weeks, he was finally given prednisone pills and anti-itch cream, but despite his serious symptoms received none of the other medications he had received from previous emergency room visits at the hospital.

121.    Mr. Fox was released from Beaufort County Detention Center at 5 a.m. on March 8, 2017.  As a result of his experiences with Beaufort Municipal Court and Beaufort County Detention Center, Mr. Fox moved out of Beaufort County after his release from jail.

## CLASS ACTION ALLEGATIONS

122.    Plaintiffs Tina Bairefoot, Dae'Quandrea Nelson, and Nathan Fox propose a class seeking damages pursuant to Fed. R. Civ. P. 23(a) and (b)(3).  The Class is defined as: (a) all indigent individuals who were incarcerated in jail or prison upon conviction in Beaufort and Bluffton municipal courts (b) without having been afforded their right to appointed counsel and without having been advised of their right to appointed counsel and (c) who could not have practicably sought habeas relief while in custody because of the brief periods of actual confinement.

123.    Numerosity (Fed. R. Civ. P. 23(a)(1)): The class is so numerous that joinder of all members is impracticable.

124.    The precise size of the proposed Class is unknown by Plaintiffs, but it is substantial given the number of people who receive sentences of incarceration in Beaufort and Bluffton Municipal Courts on a monthly basis.

125.    Available records suggest that during a 90-day period between March 21 and June 19, 2017, over 50 uncounseled jail sentences were served out of Beaufort and Bluffton Municipal

Courts. Records indicate that not one defendant who served a jail sentence during this 90-day period had counsel.

126. Beaufort County records indicate that on June 1, 2017, of the sentenced population, 35.7 percent were serving municipal sentences only. On December 1, 2016, 29.4 percent of the sentenced population were incarcerated only because of municipal charges. None had public defenders.

127. The members of the proposed Class are indigent individuals who lack the financial resources to bring an independent action. Joinder of every member of the proposed Class would be impracticable.

128. <u>Commonality</u> (Fed. R. Civ. P. 23(a)(2)): The relief sought is common to all members of the proposed Class, and there are questions of law and fact common to the Class. Among the most important common questions of fact are:

    a. whether the City of Beaufort and the Town of Bluffton have made any attempts to provide adequate funding for public defenders in municipal court;

    b. whether the City of Beaufort and Town of Bluffton have responded to complaints and/or other publicity about the absence of indigent defense in their courtrooms and whether they have taken any measures to correct their failure to provide indigent defense to Beaufort and Bluffton Municipal Courts;

    c. whether any effort was made by the City of Beaufort and the Town of Bluffton to provide appointed counsel to Plaintiffs and putative class members before sentences of incarceration were ultimately imposed;

    d. whether the City of Beaufort and the Town of Bluffton responded to requests by indigent defendants for appointed counsel;

e.   whether public defender application forms are made available by Beaufort County and BCDC, the City of Beaufort, the Town of Bluffton, the Municipal Court Clerks, and the Municipal Court Judges to municipal court defendants at their bond settings in Beaufort County Detention Center or at any other critical stage of their proceedings in municipal court;

f.   whether municipal court defendants receive an individual advisement of the right to counsel or inquiry into waiver of that right in municipal court proceedings; and

g.   whether municipal court defendants in Beaufort Municipal Court and Bluffton Municipal Court who can afford to hire private attorneys have the opportunity to be represented through the completion of their cases while indigent defendants are prosecuted, convicted, and routinely jailed without counsel.

129.   Among the most important common questions of law for the proposed Class are:

a.   whether failure to provide indigent defense in municipal court violates Plaintiffs' and class members' rights to counsel, equal protection, and procedural due process under Sixth and Fourteenth Amendments;

b.   whether jail sentences obtained in courtrooms in which no appointed counsel is available violate the right to counsel under the Sixth and Fourteenth Amendments and to due process and equal protection under the Fourteenth Amendment; and

c.   whether, in the absence of appointed counsel, the failure to advise defendants of their constitutional right to counsel, violates the Sixth and Fourteenth Amendment right to the assistance of counsel.

130.   <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)): Named Plaintiffs' claims or defenses are typical of the claims or defenses of the proposed class, and they have the same interests in this case

as all other proposed Class members that they represent.  Named Plaintiffs, like other class members, were subjected to the City of Beaufort and Town of Bluffton's policy, practice, and custom of depriving indigent defendants who received sentences of incarceration in municipal court of their right to counsel.

131.     <u>Adequacy</u> (Fed. R. Civ. P. 23(a)(4)): Named Plaintiffs will fairly and adequately represent and protect the interests of the Class members.

132.     <u>Adequacy of counsel</u> (Fed. R. Civ. P. 23(g)): The Named Plaintiffs' attorneys will fairly and adequately protect the interests of the class.  Named Plaintiffs have no interests antagonistic to the proposed class, and they are represented by attorneys with significant expertise in criminal procedure and complex civil litigation.  Plaintiffs' counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all class members.

133.     <u>Predominance and superiority</u> (Fed. R. Civ. P. 23(b)(3)): Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The class members have been damaged and are entitled to recovery as a result of the City of Beaufort and the Town of Bluffton's unconstitutional policy, practice, and custom.  The propriety and amount of compensatory damages are based on the Defendants' conduct, through their unconstitutional policy, practice, and custom, making these issues common to the class.  Damages, common to all class members, can be calculated based on the number of days of unlawful incarceration due to the Defendants' unconstitutional policy, practice, and custom.  Plaintiffs and the class will rely on common evidence to resolve their legal

and factual questions. There are no pending actions raising similar claims. There will be no undue difficulty in the management of this litigation as a class action.

134.    The proposed class seeks damages against Defendants City of Beaufort and Town of Bluffton for maintaining a policy, practice, and custom of denying indigent defendants incarcerated in jail or prison upon conviction in Beaufort and Bluffton municipal courts of their right to appointed counsel, of which they are never advised at any point in their cases, and for being deliberately indifferent to their duty to provide indigent defendants with counsel in their municipal courts.

135.    The Requirements of Rule 23(g): Plaintiffs are represented by attorneys from the American Civil Liberties Union Foundation, the American Civil Liberties Union Foundation of South Carolina, and Nelson Mullins LLP, who have experience litigating complex civil rights matters in federal court and extensive knowledge of both the details of Defendants' practices and the relevant constitutional and statutory law. Counsel has the resources, expertise, and experience to prosecute this action.

### CLAIMS FOR RELIEF

### CLAIM ONE

**Violation of the Sixth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 (Right to Counsel)**

*Plaintiffs and Proposed Class against City of Beaufort and Town of Bluffton*

202.    Plaintiffs incorporate and adopt Paragraphs 1 through 135 of this Complaint.

203.    Defendants City of Beaufort and Town of Bluffton maintain a policy, practice, and custom of failing to contract with the Fourteenth Circuit Public Defender, Beaufort County Public

Defender's Office, or private attorneys for the provision of indigent defense in municipal courts. The City and Town also maintain a policy, practice, and custom of refusing to provide counsel to indigent defendants facing incarceration in municipal courts.

204.    By failing to make court-appointed counsel available to indigent defendants who have been sentenced to incarceration in Beaufort Municipal Court and Bluffton Municipal Court, respectively, the City of Beaufort and the Town of Bluffton have violated Plaintiffs' and putative class members' Sixth and Fourteenth Amendment right to the assistance of counsel.

205.    Through their policy, practice, and custom of refusing to provide public defenders in municipal courts, the City and Town have also been deliberately indifferent to their duty to provide counsel to indigent defendants facing incarceration in municipal courts and to the foreseeable risk of constitutional violations resulting from such a policy, practice, and custom.

206.    As a direct and proximal result of Defendants' failure to provide Plaintiffs and putative class members with counsel, Plaintiffs and class members were wrongfully incarcerated, suffered injury and, upon information and belief, are entitled to general damages as compensation.

207.    As a direct and proximal result of Defendants' failure to provide Plaintiffs and putative class members with counsel, Plaintiffs and putative class members experienced additional injuries and are entitled to damages as compensation for the same, including but not limited to physical pain and suffering, mental anguish, emotional distress, and loss of income and earning capacity as a result of their wrongful incarceration.


## CLAIM TWO

**Violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983**
**(Right to Equal Protection)**

*Plaintiffs and Proposed Class against City of Beaufort and Town of Bluffton*

202.     Named Plaintiffs and putative class members have a constitutional right to equal protection of the laws as guaranteed by the Fourteenth Amendment.

203.     Plaintiffs and putative class members have a fundamental right to the assistance of appointed counsel because they are too poor to afford private counsel.  As indigent defendants, Plaintiffs and putative class members have a fundamental right to fair access to the courts and the adversarial criminal justice system.

204.     Defendants City of Beaufort and Town of Bluffton, by their policy, practice, and custom described above of refusing to provide counsel to indigent defendants facing incarceration in municipal courts, invidiously discriminated against Plaintiffs and putative class members by depriving them of their rights to counsel and fair access to the courts solely because they are indigent, while those able to pay for private counsel benefit from the assistance of counsel during all critical stages of their criminal case.

205.     By failing to make court-appointed counsel available to indigent defendants who have been sentenced to incarceration in Beaufort Municipal Court and Bluffton Municipal Court, respectively, the City of Beaufort and the Town of Bluffton have violated Plaintiffs' and putative class members' Fourteenth Amendment right to equal protection of the laws.

206.     Through the City and Town's policy, practice, and custom of refusing to provide public defenders in municipal courts, the City and Town have also been deliberately indifferent to their duty to provide counsel to indigent defendants facing incarceration in municipal courts and to the foreseeable risk of constitutional violations resulting from such a policy, practice, and custom.

207.    As a direct and proximal result of Defendants' failure to provide Plaintiffs and putative class members with counsel, Plaintiffs and class members were wrongfully incarcerated, suffered injury and, upon information and belief, are entitled to general damages as compensation.

208.    As a direct and proximal result of Defendants' failure to provide Plaintiffs with counsel, Plaintiffs and class members experienced additional injuries and are entitled to damages as compensation for the same, including but not limited to physical pain and suffering, mental anguish, emotional distress, and loss of income and earning capacity as a result of their wrongful incarceration.

## CLAIM THREE

**Violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983**
**(Right to Procedural Due Process)**

*Plaintiffs and Proposed Class against City of Beaufort and Town of Bluffton*

209.    Named Plaintiffs and putative class members have a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

210.    The Due Process Clause of the Fourteenth Amendment also protects Plaintiffs and putative class members' right to a fundamentally fair adjudicative process.

211.    Defendants City of Beaufort and Town of Bluffton maintain a policy, practice, and custom of failing to contract with the Fourteenth Circuit Public Defender, Beaufort County Public Defender's Office, or private attorneys for the provision of indigent defense in municipal courts. The City and Town also maintain a policy, practice, and custom of refusing to provide counsel to indigent defendants facing incarceration in municipal courts.

212.    By failing to make court-appointed counsel available to indigent defendants who have been sentenced to incarceration in Beaufort Municipal Court and Bluffton Municipal Court,

respectively, the City of Beaufort and the Town of Bluffton have violated Plaintiffs' and putative class members' procedural due process rights as guaranteed by the Fourteenth Amendment.

213.     This policy, practice, and custom also infringed upon Plaintiffs and the putative class members' right to a fundamentally fair adjudicative process in violation of their Fourteenth Amendment due process right.

214.     Through its policy, practice, and custom of refusing to provide public defenders in municipal courts, the City and Town have also been deliberately indifferent to their duty to provide counsel to indigent defendants facing incarceration in municipal courts and to the foreseeable risk of constitutional violations resulting from such a policy, practice, and custom.

215.     As a direct and proximal result of Defendants' failure to provide Plaintiffs and class members with counsel, Plaintiffs and class members were wrongfully incarcerated, suffered injury and, upon information and belief, are entitled to general damages as compensation.

216.     As a direct and proximal result of Defendants' failure to provide Plaintiffs with counsel, Plaintiffs and class members experienced additional injuries and are entitled to damages as compensation for the same, including but not limited to physical pain and suffering, mental anguish, emotional distress, and loss of income and earning capacity as a result of their wrongful incarceration.

## RELIEF REQUESTED

WHEREFORE, Named Plaintiffs and the Class pray for relief as follows:

a.     That the Court assume jurisdiction over this action;

b.     Certify the Class under Fed. R. Civ. P. 23(a) and (b)(3);

c.     Designate Plaintiffs Tina Bairefoot, Dae'Quandrea Nelson, and Nathan Fox as representatives of the class;

d.     Designate Representative Plaintiffs' counsel of record as class counsel;

e.     Award damages against the City of Beaufort and Town of Bluffton to compensate Named Plaintiffs and putative class members for all of the time they spent wrongfully confined, in violation of their rights to counsel, equal protection, and procedural due process (Claims 1, 2, and 3);

f.     Award damages against the City of Beaufort and Town of Bluffton to compensate Named Plaintiffs and putative class members for additional injuries, including but not limited to physical pain and suffering, mental anguish, emotional distress, and loss of income and earning capacity as a result of their wrongful incarceration (Claims 1, 2, and 3);

g.     Award costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

h.     Grant or award any other relief this Court deems just and proper.


DATED this the 12th day of October, 2017.


Respectfully submitted by,

s/ Susan K. Dunn
SUSAN K. DUNN (Fed. Bar #647)
American Civil Liberties Union Foundation
of South Carolina
P.O. Box 20998
Charleston, South Carolina 29413-0998
Telephone: (843) 282-7953
Facsimile: (843) 720-1428
Email: sdunn@aclusc.org

EZEKIEL R. EDWARDS*
TWYLA CARTER*
American Civil Liberties Union Foundation
Criminal Law Reform Project
125 Broad Street, 18th Floor

New York, NY  10004
Telephone: (212) 549-2610
Facsimile: (212) 549-2651
eedwards@aclu.org
tcarter@aclu.org

STUART M. ANDREWS, JR. (Fed. Bar
#1099)
B. RUSH SMITH, III (Fed. Bar #5031)
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC  29201
(803) 799-2000
stuart.andrews@nelsonmullins.com
rush.smith@nelsonmullins.com

**Attorneys for Plaintiffs and the Proposed Class**

\* Application for pro hac vice admission to be submitted