IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Tina Renee Bairefoot, *et al.*, | Civil Action No. 9:17-2759-RMG |
| Plaintiffs, | |
| v. | **ORDER AND OPINION** |
| City of Beaufort, South Carolina, *et al.*, | |
| Defendants. | |

This matter is before the Court on Defendants' motion to dismiss. For the reasons set forth below, the Court denies the motion.

**I.   Background**

**A.   Plaintiffs**

Plaintiff Tina Bairefoot was convicted of shoplifting miscellaneous merchandise worth approximately $163 from a Walmart. (Dkt. No. 1 ¶ 57.) She was not represented by an attorney and she was not advised of her right to counsel. (*Id.* ¶¶ 59–66.) Beaufort Municipal Judge Ned Tupper sentenced her to pay a fine and court costs of $2,220, or to serve thirty days in jail. *See* Beaufort County, Public Index, *available at* http://publicindex.sccourts.org/Beaufort/PublicIndex/PISearch.aspx [hereinafter "Beaufort County Judicial Records"].[1] Ms. Bairefoot's income is below the federal poverty guidelines.[2] (Dkt. No. 1 ¶ 55.) Although Beaufort court records appear to indicate that Ms. Bairefoot was incarcerated because she was unable to pay that fine, Plaintiffs allege with specificity that Ms.

---

[1] This Court "may properly take judicial notice of matters of public record" when considering a motion to dismiss. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[2] In South Carolina courts, income below the federal poverty guidelines creates a presumption of indigency for purposes of appointing defense counsel. Rule 602(b), SCACR.

Bairefoot was sentenced to incarceration immediately upon conviction on February 6, 2017. (*Id.* ¶ 66.) She served 15 days. (*Id.* ¶ 67.)

Plaintiff Dae'Quandrea Nelson was convicted of third-degree assault and battery and disturbing the schools. (*Id.* ¶ 100.) The charges arose from a fight between students at a high school that occurred when Mr. Nelson was a 17-year-old student. (*Id.* ¶ 76.) He was not represented by an attorney and he was not advised of his right to counsel. (*Id.* ¶¶ 86, 93, 102.) When he first appeared in Bluffton Municipal Court on February 2, 2016, he applied for pretrial intervention and his application was accepted. (*Id.* ¶ 83–88.) Mr. Nelson however failed to complete required weekend community service and he failed to pay a required $30 fee (although he had already paid $350 to apply to pretrial diversion), so he appeared again in Bluffton Municipal Court on February 21, 2017. (*Id.* ¶¶ 87–89, 93.) Judge Dustin Lee sentenced him to pay a fine and court costs of $3,212.50, or to serve two concurrent 30-day jail sentences. *See* Beaufort County Judicial Records. Mr. Nelson's income is below the federal poverty guidelines. Mr. Nelson was incarcerated immediately upon sentencing. (Dkt. No. 1 ¶ 101.) Mr. Nelson served 16 days in jail. (*Id.* ¶ 103.)

Plaintiff Nathan Fox was convicted of speeding (10 mph or less), no proof of insurance, driving under a suspended license (third or subsequent offense), use of a license plate issued for a different vehicle, and defacement of a license plate. (*Id.* ¶ 108.) Judge Ned Tupper set a cash bond of $2,926.25, an amount apparently calculated to equal the expected fine and court costs of the charges. (*Id.* ¶ 110.) Mr. Fox's income is below the federal poverty guidelines. (*Id.* ¶ 107.) He was unable to post the cash bond and remained in jail for three weeks awaiting trial. (*Id.* ¶ 113.) He appeared before Beaufort Municipal Judge Mary Sharp on February 20, 2017. He was not represented by an attorney and he was not advised of his right to counsel. (*Id.* ¶¶ 114, 116.)

He pleaded guilty to the charges. (*Id.* ¶ 115.) Judge Sharp did not hold a plea colloquy with Mr. Fox. (*Id.*) She sentenced him to a fine and court costs of $2,879.38 and five consecutive 10-day jail sentences for the five charges, even though South Carolina law does not authorize imprisonment for one of those charges (speeding less than 10 mph). *See* S.C. Code § 56-5-1520(G); Beaufort County Judicial Records; (Dkt. No. 1 ¶ 115). After sentencing, he returned to the Beaufort County Detention Center under two bench warrants from magistrate court. (Dkt. No. 1 ¶ 117.) Ultimately, Mr. Fox spent 38 days in jail on the five municipal charges. Beaufort County records indicate that may have been sentenced to jail on the traffic charges for inability to pay the $2,879.38 fine, *see* Beaufort County Judicial Records, but that is unclear because of the warrants for Mr. Fox's arrest on other charges.

**B.    The municipal court system**

In South Carolina, municipal courts are optionally created by municipalities to hear petty criminal cases. *See* S.C. Code § 14-25-5. Where there is no municipal court, such cases are heard by magistrate courts. The municipal judges often are lawyers in private practice who serve in a part time capacity, but they are not required to be lawyers.[3] They are part of the unified state judicial system under the supervision of the Chief Justice of South Carolina, S.C. Code § 14-25-5(a), but the municipalities appoint and reappoint the judges for terms of two to four years and the municipalities set the judges' compensation, S.C. Code § 14-25-15(A).

Before 2009, the Public Defender for the Fourteenth Judicial Circuit provided representation to indigent defendants in Beaufort and Bluffton Municipal Courts. (*Id.* ¶ 30.) In 2009, Defendants ignored requests from the public defender for funding to cover those services. Consequently, the public defender notified the municipal judges that the public defender would

---

[3] The judges relevant to the complaint allegations—Ned Tupper, Mary Sharp, and Dustin Lee—are lawyers in private practice. Dustin Lee is no longer a municipal judge.

no longer provide representation and the municipalities that they needed to contract with private attorneys to provide indigent defense they needed to contract with private attorneys. (*Id.* ¶ 30.)

Thereafter, in 2015, the state legislature required municipalities that elect to have a municipal court to provide adequate funds for representation of indigent defendants. Act No. 91, 2015 S.C. Acts 429, 884 (2015) [hereinafter "Proviso 61.12"]. The legislature has reenacted that requirement each subsequent fiscal year. The Municipal Association of South Carolina's October 2015 newsletter, under the banner headline "Indigent defense costs are municipal responsibility," informed South Carolina's municipalities that this law gave them "four potential courses of action":

> 1. Negotiate an agreement for indigent defense with the circuit public defender. Several cities and towns have already taken this option.
>
> 2. Contract with an independent attorney for a fee or pro bono. Before contracting with the attorney, the town should ensure the attorney has malpractice insurance.
>
> 3. Remove the threat of jail time for indigents, although this makes it more difficult to collect any fines that might be imposed on the defendant.
>
> 4. Close the municipal court and negotiate an agreement with the county to have municipal cases tried in magistrate court.

Mun. Ass'n of S.C., *Indigent defense costs are municipal responsibility*, Uptown, Oct. 2015 (cited at Dkt. No. 1 ¶ 27). It also warned, "Failure to provide indigents with counsel could expose cities to liability" and "advocacy groups around the country are seeking opportunities to sue cities that violate the indigent defendant's right to counsel." *Id.*

Defendants nonetheless failed to provide counsel for indigent defendants before Plaintiffs were sentenced to jail in 2017. At an April 25, 2017 Beaufort City Council meeting, city operations manager Linda Roper discussed with the city council a request for $10,000 in fiscal year 2018 to contract with a private attorney to provide municipal court indigent defense, which

she described as "a mandate from the state." Beaufort City Council, Minutes, April 25, 2017, at 2. The Beaufort Municipal Court annual budget is approximately $500,000 and the court generates about $220,000 in revenue. *Id.* at 2–3. Ms. Roper recommended contracting with a private attorney rather than the public defender because the public defender has a case backlog and because Beaufort would get more "bang for the buck" from a local attorney retained by the council than from the public defender for the Fourteenth Judicial Circuit, who operates beyond the control of the City of Beaufort. *Id.* at 2. Councilman Philip Cromer asked if Beaufort could simply pay a fine rather than provide counsel for indigent defendants as required by law. *Id.* Councilman Mike McFee noted that course of action could result in litigation brought by the American Civil Liberties Union ("ACLU"). *Id.*[4]

Around the time of those discussions, at least fifty unrepresented persons were sentenced to incarceration in Beaufort and Bluffton municipal courts (Dkt. No. 1 ¶ 41 (period March 21 to June 19, 2017)) and 36% of the inmates in the Beaufort County Detention Center were incarcerated on municipal court charges without the assistance of counsel (*Id.* 1 ¶ 42 (as of July 1, 2017)). On September 15, 2017, the Chief Justice of South Carolina issued a memorandum to all municipal court judges instructing them that "[a]ll defendants facing criminal charges in your courts that carry the possibility of imprisonment must be informed of their right to counsel and,

---

[4] The Town of Bluffton's actions are more opaque. Its fiscal year 2017 budget included "[p]rovide counsel for indigents per new State law" under a list of "Current Performance Initiatives" for its Finance and Administration Department, which includes the municipal court. Town of Bluffon Adopted Consolidated Municipal Budget, Fiscal Year 2018, June 14, 2016, at 77. Whether that meant actually providing counsel for indigent defendants in 2017 is unclear, especially since the FY 2017 municipal court budget was only $2,955 higher than the revised FY 2016 budget (a less-than-inflation increase). *Id.* at 79. The FY 2018 municipal court budget, however, was $14,720 higher than the revised FYE 2017 budget. Town of Bluffon Adopted Consolidated Municipal Budget, Fiscal Year 2018, June 13, 2017, at 48.

if indigent, their right to court-appointed counsel prior to proceeding with trial" and that failure to do so would be a "clear violation" of the United States Constitution. (*Id.* 53.)

## C. Procedural History

The ACLU filed the present putative class action on behalf of named Plaintiffs Tina Bairefoot, Dae'Quandrea Nelson, Nathan Fox, and all other persons similarly situated, on October 11, 2017. Plaintiffs assert claims under 42 U.S.C. § 1983 for alleged violations of the Sixth and Fourteenth Amendments. They seek compensatory damages, attorney's fees, and "any other relief" the Court deems proper. Defendants moved to dismiss the complaint for failure to state a claim on December 17, 2017. The Court held a hearing on the motion on April 9, 2018.

## II. <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Discussion

Under the Sixth Amendment to the Constitution, "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972). The constitutional requirement only applies to the actual imposition of a sentence of imprisonment. It does not apply where the statute under which the defendant is charged provides for imprisonment as a possible sentence. *See Scott v. Illinois*, 440 U.S. 367, 373 (1979). The right, however, does apply to a suspended or contingent sentence of imprisonment. *Alabama v. Shelton*, 535 U.S. 654, 662 (2002).

Independently, under the Equal Protection Clause of the Fourteenth Amendment, it is unconstitutional for a state to sentence a person to any period of imprisonment for inability to pay a fine. "[T]he Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." *Tate v. Short*, 401 U.S. 395, 398 (1971).

Under those well-established constitutional rules, sentencing Plaintiffs to incarceration—either immediately or for inability to pay a fine—without assistance of counsel was a clear violation of federal law. Indeed, Defendants do not argue otherwise. Rather, they argue municipalities like themselves cannot be liable for the constitutional violations alleged. They argue that the duty to provide counsel for indigent criminal defendants is a judicial duty, not a

municipal duty, that any municipal failure to comply with state law requiring appropriations for indigent defense is not actionable under § 1983, that they could not have proximately caused the alleged constitutional violations, and that the alleged facts are insufficient to show actual causation. They also argue the present suit seeks direct review of a state court judgment in violation of the *Rooker-Feldman* doctrine or is a collateral attack on criminal convictions impermissible under *Heck v. Humphrey*, 512 U.S. 477 (1994). As explained below, Defendants' arguments are without merit.

A.   **Defendants were required to provide counsel for Plaintiffs**

Defendants argue *Reed v. Town of Lexington*, 902 F.2d 1566 (4th Cir. 1990) (unpublished) holds that South Carolina municipalities have no legal duty to provide legal counsel for indigent defendants in municipal courts. (Dkt. No. 14-1 at 3–4.) In *Reed*, the plaintiffs sued the Town of Lexington, South Carolina, alleging, *inter alia*, that they were tried in Lexington municipal courts without assistance of counsel and sentenced to imprisonment. The Fourth Circuit reasoned the Town had no control over the Lexington municipal judge because "the municipal courts in South Carolina are, by statute, a part of the state's unified judicial system" and "[u]nder South Carolina law, administration of the unified judicial system is the responsibility of the judicial branch pursuant to Article V of the state constitution and is not a matter of local concern." 902 F.2d 1566, at *2. For the same reason, the court determined the Town could not provide any relief for a municipal judge's wrongdoing.

Plaintiffs correctly argue *Reed* is inapplicable because state law enacted after *Reed* was decided makes counsel for indigent defendants "a matter of local concern" by requiring municipalities to providing funding for such counsel in their municipal courts. *See* Proviso 61.12. The other case Defendants cite in support of their no-duty-to-provide-counsel argument, *Hamill v. Wright*, 870 F.2d 1032, 1037 (5th Cir. 1989), is inapplicable for the same reason. In

*Hamill*, the Fifth Circuit held, "Texas law makes only state court judges responsible for appointing attorneys for indigent criminal defendants." 870 F.2d at 1037. South Carolina law, however, clearly makes municipalities responsible for providing for indigent defense in municipal courts.

Further, *Reed*'s holding regarding municipal courts relies solely upon *Kramer v. County Council for Dorchester County*, 282 S.E.2d 850 (S.C. 1981). *Kramer* concerned a master-in-equity's pay dispute with Dorchester County. The "matter of local concern" language in *Reed* comes from the statement in *Kramer* that delegations of legislative authority to local governments are limited to "local matters." *Id.* at 852 (citing *Gaud v. Walker*, 53 S.E.2d 316, 321 (S.C. 1949) ("[T]he general doctrine prohibiting the delegation of legislative authority has no application to the vesting in political subdivisions of powers to govern matters which are local in scope.")). The South Carolina Supreme Court held that delegating to counties the power to fix compensation of masters-in-equity, who are appointed by the Governor and who hold office in courts established by the legislature, "clearly exceeds the scope of 'local concerns'" and so is an unconstitutional delegation of legislative authority. *Kramer* does not suggest that municipalities have no control over the municipal courts that they create. To the contrary, South Carolina municipalities have considerable control over their municipal courts. Municipalities appoint and reappoint the municipal judges and set their salaries. S.C. Code § 14-25-15(A).

> Moreover, City Council, as noted above, possesses broad discretion in generally administering the Municipal Court System. Council determines the number of municipal judges, full-time and part-time. Council also has broad authority with respect to ministerial recorders. Moreover, Council, as the funding authority for the city, has broad authority to establish by ordinance the Municipal Court System. Accordingly, Council possesses considerable discretion in the structure, make-up, organization and administration of the court system through the local legislative process.
>
> Again, I would reiterate that the authority given by the General Assembly in this area is ample to remedy the situation [excessive caseloads]. Council possesses

> clear authority over the municipal judges and ministerial recorders in the sense of creation of positions, funding, appointment, reappointment, etc. Council also retains broad legislative policy-making authority in terms of the structure and organization of its Municipal Court System as well as the authority to contract with the other municipalities or the county to assist it.

Letter from Assistant Deputy Attorney General Robert D. Cook to Senator Robert W. Hayes, Jr., 1996 WL 549582, at *5 (S.C.A.G. Aug. 27, 1996).

**B. Defendants' failure to provide counsel for Plaintiffs is actionable under federal law**

Defendants argue that even if the Proviso 61.12 does require municipalities to provide for indigent defense in municipal courts (as it indeed does), municipal failure to comply with a state law is not actionable under § 1983. But Proviso 61.12 merely means the municipalities are the public authorities designated by state law to provide for indigent defense in municipal courts— Proviso 61.12 even prohibits the South Carolina Commission on Indigent Defense from providing indigent defense in municipal courts unless municipalities agree to pay for such services. A deliberate decision to create criminal courts that operate without providing counsel to indigent defendants is a violation of the Sixth Amendment, which certainly is actionable under § 1983. *See Gideon v. Wainwright*, 372 U.S. 335, 342 (1963) (holding the right to counsel "is made obligatory upon the States by the Fourteenth Amendment"); *Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1134 (W.D. Wash. 2013) ("Having chosen to operate a municipal court system, however, defendants are obligated to comply with the dictates of the Sixth Amendment . . . ."). Here, as in *Wilbur*, "Plaintiffs have shown that the constitutional deprivations at issue here were the direct and predictable result of the deliberate choices of City officials charged with the administration of the public defense system." 989 F. Supp. 2d at 1132.

**C. Causation**

Defendants further argue the failure to fund defense counsel did not proximately cause the violation of Plaintiffs' rights because Defendants have no control over the municipal judge.

They argue the municipal judge should have ordered some member of the bar to represent indigent defendants.[5] According to Defendants, that lawyer could then sue the municipalities for fees pursuant to Proviso 61.12. (Dkt. Nos. 26 at 8–9, 32 at 31–34.) An alternative would be for the municipal judge simply not to sentence unrepresented persons to a term of imprisonment. Either way, there would be no constitutional violation.

Those arguments imply the municipal judge's decision to violate the Constitution is a superseding cause of the alleged violation, relieving the municipalities of liability. The Fourth Circuit addressed superseding causes and proximate causation in constitutional torts in *Evans v. Chalmers*, holding "an alleged officer-prosecutor conspiracy does not alter the rule that a prosecutor's independent decision to seek an indictment breaks the causal chain unless the officer has misled or unduly pressured the prosecutor" because "subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain"). 703 F.3d 636, 647, 649 (4th Cir. 2012). But the *Evans* court also held that "even when, as here, a prosecutor retains all discretion to seek an indictment, [ ] police officers may be held to have caused the seizure and remain liable to a wrongfully indicted defendant under certain circumstances." *Id.* at 647. That is because superseding causation "is usually a rule allowing a defendant to avoid liability where damages have been caused by a third party or a force that was entirely unforeseeable, so much so that it

---

[5] It is unclear whether municipal judges have authority to appoint counsel. In 2013, Beaufort city attorney Bill Harvey told a local newspaper that municipal judges lack the authority to appoint counsel. Tom Barton, *ACLU: Equal justice for poor remains unfulfilled in SC municipal courts*, The Island Packet (October 5, 2013). Rule 608, SCACR ("Appointment of lawyers for indigents") expressly applies only to circuit and family courts. Rule 602, SCACR ("Defense of indigents") requires the appointment of counsel in municipal court cases where a prison sentence is likely, but the rule can be read as requiring the municipal judge to forward an approved application for appointed counsel to a circuit judge for an order of appointment. For present purposes, this Court assumes a municipal judge could appoint counsel for an indigent criminal defendant.

could hardly be said that the injury was the result of the defendant's negligence." *Rawl v. United States*, 778 F.2d 1009, 1015 (4th Cir. 1985).

Here, it was foreseeable that Defendants' failure to provide for indigent defense in courts of their own creation, as required by state law, would result in a violation of the Sixth Amendment. Defendants were on notice that their courts had been sentencing unrepresented persons to incarceration for years and in large numbers. (Dkt. No. 1 ¶¶ 25–27, 30–33, 35, 41–43, 49.) They were also on notice that they had a duty to provide counsel. (*Id.*) Indeed, in 2013—years before Plaintiffs were denied counsel—the ACLU brought the issue to Defendants' attention. (*Id.* ¶ 49.) A counterfactual hypothesis that the municipal judges appointed by Defendants might have intervened to prevent an ongoing constitutional violation known to Defendants does not make the violation unforeseeable. *See, e.g.*, *Malley v. Briggs*, 475 U.S. 355, 345–46 (1986).

Defendants also argue that even if damages are recoverable "in theory," they cannot show their alleged damages arising from incarceration were actually caused by the deprivation of counsel, because Plaintiffs cannot show that they would have avoided incarceration but for the absence of counsel. (*See* Dkt. No. 26.) A structural error like denial of counsel does not require a showing of prejudice when reviewing a criminal conviction for legal error, but some actual harm must be shown to establish liability for compensatory damages. But the alleged deprivation of counsel certainly suffices to support a claim for nominal damages. *See Via v. Cliff*, 470 F.2d 271, 275 (3d Cir. 1972) (holding a plaintiff "can maintain this cause of action" under § 1983 for infringement of his right to counsel "without alleging or proving prejudice to his defense at trial by the alleged actual infringements"). The proper measure of damages in the

event Plaintiffs are unable to show the alleged constitutional violations caused prejudice to their defenses in their criminal cases is not an issue before this Court at this time. *See id.* at n.3.

**D.** *Heck v. Humphrey*

Defendants argue *Heck v. Humphrey* bars this § 1983 action because success "would necessarily imply the invalidity" of Plaintiffs' underlying criminal convictions. *See* 512 U.S. 477, 486–87. That argument is without merit. *Heck* does not bar this case because Plaintiffs have plausibly pleaded that habeas relief was unavailable due to the short periods of imprisonment involved. (Dkt. No. 1 ¶¶ 68, 104, 118); *see Wilson v. Johnson*, 535 F.3d 262, 268 (4th Cir. 2008) ("If a prisoner could not, as a practical matter, seek habeas relief, and after release, was prevented from filing a § 1983 claim, § 1983's purpose of providing litigants with 'a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nations,' would be severely imperiled." (citation omitted)). Whether habeas relief was available is a question of fact. *See Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 197–98 (4th Cir. 2015). Plaintiffs' allegations that habeas was in fact unavailable are quite plausible—indeed, it is difficult to imagine how federal habeas relief possibly could have been available to an unrepresented indigent person serving a two- or four-week sentence in a county jail.

**E.** **The *Rooker-Feldman* doctrine**

Defendants argue the *Rooker-Feldman* doctrine prohibits Plaintiffs' claims because they seek redress for injuries allegedly caused by a state court decision. "[T]he *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006). "The *Rooker-Feldman* doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of

constitutional claims that are inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997) (internal quotation marks omitted). "However, the *Rooker-Feldman* doctrine does not bar review of a ruling of a state court in habeas corpus proceedings." *Id.*

Defendants essentially argue this Court lacks jurisdiction over the alleged constitutional violations because after Plaintiffs were convicted in municipal court without counsel and sentenced to short jail sentences, they failed to litigate their convictions *pro se* all the way to the United States Supreme Court. That argument is directly contradicted by the Fourth Circuit's holding that where "a prisoner could not, as a practical matter, seek habeas relief," he may file a § 1983 claim to vindicate his constitutional rights "against incursions under the claimed authority of state law upon rights secured by the Constitution." *Wilson*, 535 F.3d at 268. Obviously, no such § 1983 claim could be filed if *Rooker-Feldman* barred federal district courts from considering any constitutional defect in a state criminal proceeding not presented through a petition for a writ of habeas corpus. Moreover, if a criminal defendant were denied counsel and sentenced to incarceration in state court for a term of incarceration long enough to allow a habeas petition, but he could not exhaust state remedies precisely because he was denied counsel, habeas relief could be available under 28 U.S.C. § 2254(b)(1)(B). It would be illogical to read *Rooker-Feldman* as holding that in an otherwise identical case, there can be no federal jurisdiction over an alleged violation of the Constitution merely because a federal filing during the period of incarceration was factually impossible. That is exactly the result *Wilson* prohibits: "we do not believe that a habeas ineligible former prisoner seeking redress for denial of his most precious right—freedom—should be left without access to a federal court." 535 F.3d at 268.

Moreover, that result would also be inconsistent with the Fourth Circuit's narrow reading of *Rooker-Feldman*:

> To emphasize the narrow role that the *Rooker-Feldman* doctrine is to play, the Supreme Court has noted repeatedly that, since the decisions in *Rooker* and *Feldman*, it has *never* applied the doctrine to deprive a district court of subject matter jurisdiction. Similarly, since *Exxon*, we have never, in a published opinion, held that a district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine.
>
> To be sure, the distinction between preclusion principles and the *Rooker-Feldman* doctrine can sometimes be subtle, but it is nonetheless important to maintain. Preclusion principles are designed to address the tension between two concurrent, independent suits that results when the two suits address the same subject matter, claims, and legal principles. Whereas the *Rooker-Feldman* doctrine, by contrast, assesses only whether the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in a district court *specifically* to review that state court judgment. Thus, if a plaintiff in federal court does not seek review of the state court judgment itself but instead "*presents an independent claim*, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court."

*Thana v. Bd. of License Comm'rs for Charles Cty., Md.*, 827 F.3d 314, 320 (4th Cir. 2016) (emphasis in original). Here, Plaintiffs' claims under § 1983 are not an attempt to "sidetrack" the direct appeal process for state convictions for shoplifting, assault, or motor vehicle violations, but, rather, are claims independent of the underlying state criminal judgments. The complaint does not ask this Court to review state-court findings of fact or conclusions of law supporting Plaintiffs' criminal convictions. Plaintiffs seek to force two South Carolina municipalities to comply with the Constitution's requirement to provide counsel for indigent defendants appearing in criminal courts created and managed by those municipalities, and to remedy the municipalities' past failure to meet that basic constitutional requirement. In *Skinner v. Switzer*, the Supreme Court held that "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." 562 U.S. 521, 532 (2011). If *Rooker-Feldman* does not bar lower federal court review of the statute governing

a state court's judgment, then it surely does not bar lower federal court review of a municipal policy merely because that policy governs some aspect of a state court's administrative practices.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss (Dkt. No. 14).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

May 16, 2018
Charleston, South Carolina