# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| TINA RENEE BAIREFOOT, DAE'QUANDRE TREVELL NELSON, and NATHAN LEE FOX, individually and on behalf of a class of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BEAUFORT, SOUTH CAROLINA; TOWN OF BLUFFTON, SOUTH CAROLINA,<br><br>Defendants. | Civ. No. 9:17-cv-2759-RMG<br><br>**PLAINTIFFS' MOTION TO MODIFY AND ENFORCE THE PARTIES' SETTLEMENT AGREEMENT** |

## INTRODUCTION

In 2017, Plaintiffs filed suit against the City of Beaufort ("Beaufort") and the Town of Bluffton ("Bluffton") (collectively referred to as "Defendants") challenging their unconstitutional denial of counsel to indigent defendants in municipal court. ECF No. 1. In 2019, the parties reached a settlement agreement ("Agreement"). ECF Nos. 44–45.

Over the life of the Agreement, Plaintiffs' counsel made reasonable efforts to enforce the terms of the Agreement. In 2020, Plaintiffs' counsel sent a letter to and conferred with Defendants to express concerns about Defendants' data and practices related to the appointment of counsel. In the fall of 2022, review and analysis of Defendants' monthly data and records led Plaintiffs' counsel to believe Defendants were not in substantial compliance with several terms of the Agreement. To verify the data analysis, Plaintiffs' counsel conducted interviews with knowledgeable parties and attended court in both jurisdictions. Those efforts confirmed that Defendants were not in substantial compliance with all of the terms of the Agreement. Plaintiffs' counsel then followed the enforcement procedure provided in the Agreement and gave notice to

1

Defendants of their non-compliance in May 2023. Subsequently, Beaufort cured the violations brought to its attention; Bluffton did not.

Because the Town of Bluffton has failed to achieve substantial compliance with the Agreement, Plaintiff now respectfully moves this Court to modify and enforce the terms of the Agreement against Defendant Bluffton.

> **I.     This case, and the Parties' Agreement resolving it, arose from unconstitutional practices in municipal courts in the City of Beaufort and the Town of Bluffton.**

Plaintiffs filed suit in October 2017, alleging violations of their right to counsel under the Sixth Amendment, right to equal protection under the Fourteenth Amendment, and right to procedural due process under the Fourteenth Amendment. ECF No. 1 at ¶¶ 202–16. Prior to filing, Ms. Bairefoot, Mr. Nelson, and Mr. Fox had each been convicted of and sentenced to jail for municipal-level offenses—without advisement of their right to or provision of counsel. ECF No. 1 at ¶¶ 54–121.

Shortly after receiving service, Defendants filed a Motion to Dismiss for Failure to State a Claim, arguing that (1) Defendants had no authority to guarantee counsel, (2) alleged violations of state law could not support a federal cause of action, (3) Defendants' actions did not cause the violations, and (4) Plaintiffs' claims were barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and the *Rooker-Feldman* doctrine. ECF No. 14. In May 2018, this Court denied Defendants' motion, confirming that "sentencing Plaintiffs to incarceration—either immediately or for inability to pay a fine—without assistance of counsel was a clear violation of federal law," and rejecting Defendants' arguments as "without merit." ECF No. 33 at 7–8.

By the summer of 2018, the Parties were "making constructive progress in their settlement negotiations." ECF No. 36. A proposed agreement was submitted in September 2019 and approved on October 7, 2019. The Agreement established policies and practices to ensure that indigent defendants in Defendants' municipal courts would be advised of their right to counsel and would be appointed counsel absent a voluntary and knowing waiver. *See* ECF No. 45 at 4–8 (Parts III–IV). Specifically, Defendants agreed to, among other things:

2

- "appoint Counsel to every Indigent defendant facing charges that carry the possibility of a Sentence of Incarceration . . . unless, upon being advised of the right to counsel, an Indigent defendant knowingly and intelligently waives such right" (Part IV, Section 1, Paragraph ii)

- "ensure that no Public Defender is assigned more than 400 cases per calendar year" (Part IV, Section 1, Paragraph iv)

- "provide written notice as well as oral advisement of the right to counsel to every person charged with an offense that carries with it the possibility of a Sentence of Incarceration. When each person charged with an offense that carries the possibility of a Sentence of Incarceration stands before the court when their case is called . . . the court [will] ask each defendant whether they want a lawyer" (Part IV, Section 1, Paragraph vi)

- "ensure that when any individual who indicates a preference to proceed without Counsel at any proceeding at which Counsel is required, there is a determination on the record whether the waiver of the right to counsel has been made voluntarily, intelligently, and with full knowledge of the direct and collateral consequences" (Part IV, Section 1, Paragraph vii)

- "not conduct any trial or sentencing proceedings without the defendant in court when that defendant is facing charges that carry the possibility of a Sentence of Incarceration" (Part IV, Section 1, Paragraph ix)

- "collect, document, and report to Plaintiffs data from their Municipal Courts specifically requested by Plaintiffs every month from the Effective Date of this Agreement until the end of this Agreement" (Part IV, Section 1, Paragraph xvii)

*Id*. The Defendants' obligations and this Court's jurisdiction last for a period of four years following the effective date the Agreement. ECF No. 45 at 11 (Part VIII, Sections 1 and 3). The Agreement expires on October 7, 2023.

## II.     The Town of Bluffton is not in substantial compliance with the terms of the Settlement Agreement.

The Town of Bluffton does not adequately advise defendants of their right to counsel, does not ensure knowing and voluntary waiver of counsel, and as a result, likely does not appoint

counsel to all indigent defendants.[1]

### A. Overview of Defendant Bluffton's Municipal Court practices.

Municipal court is held in Bluffton's Town Hall. Ex. A (McPhail Decl.) at ¶ 7. After entering the building, individuals are prompted to go through a metal detector, which is located on the right side of the hallway. *Id*. Immediately before the metal detector on the right, there is a table holding handouts describing defendants' rights, including the "Information Regarding Your Rights" form (Exhibit B to the Agreement, ECF No. 45 at 36), Faretta warnings in both English and Spanish, and an application to apply for a public defender.[2] Ex. A at ¶ 36. Immediately after the metal detector, there is a laptop computer playing a recording on a loop. *Id*. at ¶ 38. The audio contains the following advisement read aloud, in English and then in Spanish:

> Before we get started today my name is Clifford Bush III, I will be presiding over court today and would like to go over a couple of housekeeping matters before we get started with your case. Everyone in this courtroom has the right to be represented by an

---

[1] As outlined in Plaintiffs' notice letter, Ex. B at 5–7, neither Defendant Beaufort nor Defendant Bluffton was compliant with the Settlement's prohibition on trials in absentia ("TIAs"), ECF No. 45 at 6 (Part IV, Section 1, Paragraph ix) ("The Municipalities shall not conduct any trial or sentencing proceedings without the defendant in court when that defendant is facing charges that carry the possibility of a Sentence of Incarceration."). In fact, as of May 16, 2023, over 900 charges had been disposed through trials in absentia, in violation of the Settlement. *See* Ex. B at 6. Defendants expressed that they have been following South Carolina Court Administration's March 14, 2018, guidance on TIAs, Ex. C, and Defendant Beaufort requested that Plaintiffs revise their position to permit that practice. Plaintiffs agreed to Defendant Beaufort's request and would be willing to modify the Agreement to permit Defendants' continued use of the procedures outlined in the March 14, 2018, memorandum. However, Plaintiffs have experienced difficulty reaching counsel for Defendant Bluffton since August 30, despite multiple emails and phone calls, Ex. A (McPhail Decl.) at ¶ 55, and have therefore been unable to discuss jointly requesting the modification.

[2] The table and handouts were set up after Plaintiffs sent Defendants a notice letter outlining violations of the Settlement Agreement. Ex. D (Defendant Bluffton's response to the notice letter) at 3 ("We have since added the updated forms from Court Administration for advisement of rights before they enter the courtroom to speak to the prosecutor."); *see also* Ex. A at ¶ 36.

In its response to Plaintiffs' notice letter, Defendant Bluffton asserted, "Bluffton currently has on display and has had on display since the reopening of court after COVID numerous writings regarding Defendants' rights. Immediately when a person enters the doors, we have an Information Defendants' Rights Worksheet." Ex. D at 2. Plaintiffs' counsel did not see the display while attending court on January 10, 2023 or on March 7, 2023.

> attorney likewise you have the right to request a jury trial. If you cannot speak English, you have the right to have a court appointed interpreter assist you with your case. For the record if I call your case and you do not exercise your right to be represented by an attorney to request a jury trial or have a court appointed interpreter to assist you with your case, I will assume for the record that you are ready to proceed today without such. Is there anyone in the courtroom today that wishes to have an attorney to represent you and have not requested it yet, is there anyone that wishes to have a jury trial and has not requested it and is there anyone in this courtroom that does not speak English and needs a court appointed interpreter to assist you.

Ex. D at 2. The recording is played at a low volume, and each version of the advisement (in English and Spanish) takes approximately forty-five seconds, which is longer than the amount of time necessary to go through security. Ex. A at ¶ 39. Therefore, it is implausible that each defendant hears the entire advisement of their rights upon entering the court.

In Bluffton, many cases are "resolved" without the defendant ever coming before the court. *Id*. at ¶¶ 9–12, 16–22, 40–42. Before the judge takes the bench, when uncounseled defendants enter the courtroom, they are instructed (by the prosecutor and law enforcement officer) to check in with the prosecutor or law enforcement officer present. *Id*. at ¶¶ 9, 16, 40. Those defendants then walk up to the table where the prosecutor and a law enforcement officer are sitting and have one-on-one conversations about their cases. *Id*. At least some of these defendants negotiate a plea agreement with the prosecutor and then are given a "blue slip" documenting the agreement to take to the staff at the payment window. Ex. D at 3–4. The blue slip contains the following advisement:

> <u>Important !!!</u> If you are not satisfied with what I have to offer, it is your right to go before the Judge. You have a constitutional right to counsel. If you are unable to afford to hire an attorney you can fill out the application to qualify for Indigent Defense. If you choose to represent yourself you have the risk of jail time for criminal cases if you are found guilty or plead guilty.

Ex. E. Most defendants leave the courtroom after speaking with the prosecutor or law enforcement officer and never go before the court for a waiver of their right to counsel or for any other reason. Ex. A at ¶¶ 11–12, 19–22, 40.

5

When the judge takes the bench, most defendants have already left the courtroom. *Id*. at 11, 21, 40. For those who remain, the judge gives the same, one-time advisement included in the audio recording, Ex. D at 2, and proceeds to hear counseled cases, trials in absentia, or other matters.

> B. <u>Defendant Bluffton's practices do not adequately advise defendants of their right to counsel under the Settlement Agreement.</u>

Under the Agreement, "[t]he Municipalities will provide written notice as well as oral advisement of the right to counsel to every person charged with an offense that carries with it the possibility of a Sentence of Incarceration." ECF No. 45 at 5 (Part IV, Section 1, Paragraph vi). The Municipalities "will require *the court* to ask *each defendant* whether they want a lawyer" when "each person charged with an offense that carries the possibility of a Sentence of Incarceration stands before the court when their case is called[.]" *Id*. (emphasis added). Defendant Bluffton has not substantially complied with those requirements.

Although its practices have improved with the addition of the table and handouts, Defendant Bluffton still does not provide adequate written advisement to municipal court defendants of their right to counsel. The forms themselves provide accurate information, but there is nothing notifying municipal court defendants that they should pick up and read the papers. Additionally, because the courtroom is housed in a multi-purpose building, the defendants might not know the forms were intended for people arriving for court. Defendant Bluffton could alleviate this problem by placing signage on the table or having staff instruct municipal court defendants to review the materials.

Defendant Bluffton's oral advisement procedures are more problematic. Defendant Bluffton claims that municipal court defendants are orally advised of their right to counsel by Judge Bush's one-time wholesale advisement at the beginning of court, the recording in the lobby, the prosecutor, and/or the staff at the payment window. None of those oral advisements are sufficient. First, Judge Bush's wholesale oral advisement is both substantively and procedurally inadequate under the Agreement. As a substantive matter, it does not explain the availability of a

6

court-appointed attorney for indigent defendants or the risks of self-representation.[3] Procedurally, the advisement is inadequate because it is not given to "each person" when his or her case is called. Second, because the recording in the lobby is identical to Judge Bush's speech, it suffers from the same substantive flaws. Additionally, the recording is easily missed, both because it is quiet and also because it alternates between English and Spanish. *See supra*, Part II.A; Ex. A at ¶ 39. Third, even a substantively accurate advisement by the prosecutor would be inadequate because it is given by an opposing party. Moreover, while watching court on March 7, 2023, Plaintiffs' counsel witnessed the prosecutor provide to defendants only sporadic, and substantively inadequate, communication about the right to counsel. Ex. A at ¶ 17–18. Finally, any advisement by staff at the payment window, Ex. D at 4, occurs *after* many defendants have negotiated a plea deal ("long recognized" as "a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel," *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)), obtained the blue slip, and brought it to the window.

Functionally, many municipal court defendants in the Bluffton proceed during critical stages without ever being adequately advised of their right to counsel. That practice is untenable under the terms and spirit of the Parties' Agreement.

        C. <u>Defendant Bluffton's practices violate the Agreement's provisions ensuring any waiver of counsel is knowing and intelligent.</u>

Under the Agreement, "[t]he Municipalities will ensure that when any individual who indicates a preference to proceed without Counsel at any proceeding at which Counsel is required, there is a determination *on the record* whether the waiver of the right to counsel has been made voluntarily, intelligently, and with full knowledge of the direct and collateral consequences." ECF No. 45 at 5–6 (Part IV, Section 1, Paragraph vii) (emphasis added). Specifically, "when any

---

[3] Defendant Bluffton expressed willingness to revise Judge Bush's advisement, but because Plaintiffs' counsel have been unable to reach counsel for Defendant Bluffton since late August, Ex. A at ¶ 55, further discussion of revision has not occurred. Even if substantive corrections are implemented, however, Defendant Bluffton's advisement procedures are still inadequate, as explained above.

individual who has indicated a preference to proceed without Counsel at any proceeding at which Counsel is required, a colloquy must be conducted with the defendant about the pending charge(s), maximum sentence(s), and potential collateral consequence(s) of a conviction." *Id*.

Data recorded and produced by Defendant Bluffton show that only a small minority of defendants charged with jailable offenses in Bluffton Municipal Court have counsel. *See infra*, Part II.D. Therefore, the majority of defendants should receive full waiver colloquies prior to any critical stage, including negotiating with the prosecutor or taking a guilty plea. *See Missouri v. Frye*, 566 U.S. 143, 140–41 (2012). But this does not happen. Instead, many defendants negotiate with the prosecutor or a law enforcement officer prior to court and without any waiver colloquy. *See supra*, Part II.B. And, according to the data provided by Defendant Bluffton, at least ten uncounseled defendants charged with offenses carrying the possibility of a sentence of incarceration pleaded guilty during the January 10, March 7, and July 18, 2023 dockets. But at no point during those dockets did Plaintiffs' counsel witness a single adequate waiver colloquy. Permitting individuals to proceed during critical stages without first knowingly and intelligently waiving the right to counsel violates the terms and spirit of the Parties' Agreement.

> D. <u>Defendant Bluffton's practices violate the Agreement's mandate to provide counsel to every indigent defendant facing a sentence of incarceration.</u>

Data recorded and supplied by Defendant Bluffton from October 2019 through August 18 of this year strongly suggest that Bluffton is not in compliance with its obligation to appoint counsel to indigent defendants who face jailable charges. Although Bluffton's data alone do not provide the indigency status of individuals or whether the right to counsel was knowingly and intelligently waived by defendants, the data clearly show that a low proportion of municipal defendants facing jailable charges were appointed counsel. Of the 4,509 unique defendants facing at least one jailable charge, only 16.6% were assigned counsel. Ex. F (Jegede Decl.) at ¶ 19. That less than one-fifth of all defendants charged with jailable offenses receive counsel—especially when considered in conjunction with Defendant Bluffton's inadequate advisement of municipal

court defendants and failure to obtain adequate waiver—strongly supports an inference that Defendant Bluffton is not in compliance with this provision of the Agreement.

### III.  Plaintiffs have made reasonable efforts to enforce the Agreement.

Plaintiffs have attempted to enforce the Agreement by analyzing data, watching court, and communicating with Defendants.[4]

Pursuant to the Parties Settlement Agreement, Defendants Beaufort and Bluffton provide monthly data, which is analyzed by Plaintiffs' counsel. Ex. F at ¶ 3. In 2020, counsel for Plaintiffs sent a letter to Defendants outlining concerns, including about data indicating that eighty-two percent of cases in Bluffton did not have counsel, and questions, including about the written and oral advisement procedures. Ex. G.

In the fall of 2022, to supplement the data supplied by Defendants, Plaintiffs' counsel conducted interviews with knowledgeable parties and began planning court-watching. Plaintiffs' counsel attended court in Bluffton on January 10, March 7, and July 18 of this year.

Pursuant to the enforcement procedure provided in the Agreement, Plaintiffs' counsel sent a formal notice letter to Defendants on May 16, 2023, Ex. B, which triggered a compliance deadline of June 15, ECF No. 45 at 11 (Part VIII, Section 3).  At the request of counsel for Defendant Beaufort, Plaintiff extended the deadline until July 17. The notice letter identified five

---

[4] Shortly after the Settlement's adoption in October of 2019, the Covid-19 pandemic ensued. The pandemic significantly disrupted court operations across the state and restricted Plaintiffs' ability to monitor the Agreement by non-remote means. *Bluffton Municipal Court to Resume In-Person Sessions on April 6*, BLUFFTON TODAY (March 24, 2021), available at https://www.blufftontoday.com/story/news/2021/03/24/bluffton-municipal-court-resume-person-sessions-april-6/6967604002/; *see also, e.g.*, Gregory Yee, *Coronavirus is Impacting S.C.'s Court System. Here's How*, Post & Courier (updated Sept. 14, 2020), available at https://www.postandcourier.com/health/covid19/coronavirus-is-impacting-south-carolinas-court-system-heres-how/article_f6d54cd6-6555-11ea-914c-af6dbbc162f3.html; Jake Shore, *Bogged-Down Court Dockets Take Another Hit as COVID Cancels Trials in Beaufort County*, ISLAND PACKET (Aug. 25, 2021), available at https://www.islandpacket.com/news/coronavirus/article253729168.html; Kevin Dietrich, *Courts in S.C. Adapting to Challenges of Covid-19 Pandemic*, GREENVILLE BUSINESS MAGAZINE (Sept. 21, 2022), available at https://www.greenvillebusinessmag.com/2022/09/21/412229/courts-in-south-carolina-adapting-to-challenges-of-covid-19-pandemic.

areas of violations: advisement, appointments, the waiver process, trials in absentia, and provision of the public defender contract.[5] Counsel for Defendant Bluffton sent a response letter on July 14, and the meet and confer was held on August 1. Plaintiffs' counsel and counsel for Defendants Beaufort and Bluffton have had ongoing follow-up communications, including an additional meeting with counsel for Defendant Bluffton on August 16.

Following Plaintiffs' notice letter and subsequent communications, Defendant Beaufort sufficiently addressed Plaintiffs' concerns. Although Defendant Bluffton has made some changes requested by Plaintiffs, including placement of Know Your Rights handouts at the entrance to the building, Defendant Bluffton remains substantially non-compliant with some of the Agreement's core tenets. *See supra*, Part II.

### IV. Appropriate relief, including extending the duration of the Agreement, is necessary to enforce the Parties' Agreement.

Because Defendant Bluffton has not achieved substantial compliance with the Settlement Agreement, Plaintiff now moves this Court to enforce compliance pursuant to Part VIII, Section 3, Paragraph iv. ECF No. 45 at 11. Plaintiffs request that this Court extend the Settlement Agreement for one year, with options to end the enforcement period early upon a showing of six consecutive months of substantial compliance, or to extend the enforcement period if substantial compliance is still not achieved. In order to facilitate that process, Plaintiffs recommend appointment of a monitor or special master to be paid for by Defendant Bluffton.

### A. Modification of the Agreement is appropriate based on Defendant Bluffton's substantial and continued non-compliance.

The Court's authority to modify and enforce its Order incorporating the Parties' Agreement stems from the Court's inherent equitable power and from the terms of the Agreement itself. ECF

---

[5] The notice letter refers to Defendants' obligations under "Part V" of the Agreement. The letter's numbering referenced the Parties *proposed* agreement, which contained a "Conditional Acceptance" section ("Part II") and labeled the "Policies and Practices" as Part V. ECF No. 45 at 18–22. The Court's Order incorporating the Agreement did not contain the "Conditional Acceptance" section, so the "Policies and Practices" section of the Court's Order is Part IV, not Part V. ECF No. 45 at 4–8. But Defendants obligations remain the same.

No. 45 at 11 (Part VIII, Section 3, Paragraph i); Fed. R. Civ. P. 60(b)(5); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 281 (1994); *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 825–26 (4th Cir. 2005).

"A 'significant change either in factual conditions or in law,'" such as substantial non-compliance by a party, "can support a requested modification." *Thompson*, 404 F.3d at 827–28 (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)); *see also David C. v. Leavitt,* 242 F.3d 1206, 1213 (10th Cir. 2001) ("[I]t would defy logic for Appellees to agree to include the four-year Termination Provision in the Agreement if they actually foresaw that [defendants] would not be in substantial compliance with the terms of the Agreement at the end of the four-year period."); *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 284 (3d Cir. 2001) ("Courts have extended a decree or parts of a decree when a change in circumstances thwarted the basic purpose and intent of the decree when there had been pervasive violations of the decree by one party and when one party was in substantial non-compliance[.]") (citations and quotation marks omitted); *Duvall v. Hogan*, 2021 WL 2042295, at *15–16 (D. Md. May 21, 2021).

The Town of Bluffton's significant and continued violations of the Agreement, outlined in detail above, constitute a significant change in factual conditions that warrants modification of the Parties' Agreement.

> B. The requested relief is tailored to obtain Defendant Bluffton's substantial compliance with the Agreement.

Modification must be "tailored to resolve the problems created by the change in circumstances." *Rufo*, 502 U.S. at 391. The relief requested by Plaintiffs is tailored to resolve Defendant Bluffton's non-compliance.

Plaintiffs request that this Court extend the Settlement Agreement for one year, with the caveat that Defendant Bluffton may move to terminate the Agreement early upon showing six consecutive months of substantial compliance and that Plaintiffs may move to extend the Agreement further if substantial compliance is not achieved within the one-year extension.

Because the requested modification would include options to end Defendant Bluffton's obligations early or extend those obligations further, it is closely tied to Bluffton's compliance or lack thereof.

Plaintiffs also suggest that this Court appoint a monitor or special master. Much of Bluffton's non-compliance does not appear clearly on the face of the data or in recordings of the court's proceedings. (For example, Bluffton's problematic plea-bargaining practices occur prior to the judge taking the bench.) A monitor would be able to more closely and more frequently observe Bluffton's dockets to assess compliance. Appointment of a monitor would benefit both parties because a monitor would be able to certify Bluffton's compliance to Plaintiffs and to this Court to facilitate an early end to the modified Agreement.

## CONCLUSION

When Plaintiffs initially filed suit in 2017 and when they reached an agreement with Defendants in 2019, they sought to realize the promises of the Sixth Amendment of the U.S. Constitution for defendants in Bluffton Municipal Court. Unfortunately, almost four years later, those promises remain elusive. Plaintiffs respectfully request that this Court extend the Parties' Agreement and appoint a monitor to ensure the Parties' Agreement—and the Sixth Amendment's guarantees—are fulfilled.


Date: September 18, 2023


/s *Meredith McPhail*
Meredith Dyer McPhail, #104551
David Allen Chaney, Jr., #104038
American Civil Liberties Union of South Carolina
P.O. Box 1668
Columbia, SC 29202
(843) 259-2925
mmcphail@aclusc.org
achaney@aclusc.org

Julian Clark*

American Civil Liberties Union Foundation
Criminal Law Reform Project
125 Broad Street, 18th Floor
New York, New York 10004
(929) 969-4365
jclark@aclu.org
\**Pro Hac Vice Forthcoming*